368 So.2d 1176 (1979)
Reginald KANE, Plaintiff-Appellant,
v.
Gilman BRAQUET, Jr., et al., Defendants-Appellees.
No. 6884.
Court of Appeal of Louisiana, Third Circuit.
March 7, 1979.
Writ Refused April 23, 1979.
*1177 Walton J. Barnes and George L. Clauer, III, Baton Rouge, for plaintiff-appellant.
Landry, Watkins & Bonin, William O. Bonin, New Iberia, J. Minos Simon, and David A. Hurlburt, Lafayette, for defendants-appellees.
Before WATSON, SWIFT and STOKER, JJ.
SWIFT, Judge.
The plaintiff, Reginald Kane, has brought this tort action for damages against the defendants, Gilman Braquet, Jr., Mayo Romero, Sr., Avery Island, Inc. and McIlhenny Company. The trial judge sustained a peremptory exception of no cause of action filed by all of the defendants except Braquet, and the plaintiff has appealed. We affirm.
According to the petition, at approximately 10:30 P.M. on March 2, 1977, the plaintiff was on his way to work with International Salt Company at its salt mine on Avery Island, Louisiana. At the entrance to the island which is owned by Avery, he stopped at a guard house and on being identified was admitted by the guard, Romero, an employee of Avery and McIlhenny. *1178 Shortly after Kane had passed, Gilman Braquet, Jr. stopped at the gate. Although intoxicated, he was admitted by Romero without requiring him to produce any identification or recognizable authorization. Upon gaining access Braquet proceeded to International's parking lot on that portion of the island leased from Avery where he shot Kane in the abdomen.
The allegations of the petition, as amended four times, dealing with exceptors' liability are as follows:

3-A.
"Petitioner shows that Avery Island, Inc. has established certain rules for the purpose of governing access to Avery Island, Inc. and, for the purpose of maintaining those rules, it also maintains a toll gate at the only road entrance to Avery Island. The toll gate is manned by a guard or gate keeper employed by Avery Island, Inc., in part, for the purpose of enforcing its rules and regulations with regard to access. Avery Island, Inc. has established, among others, these rules and regulations:
1.No vehicle will be admitted without proper State or Parish inspection stickers, and in proper operating condition according to State and Parish laws and regulations, no vehicle which may cause damage to the road will be admitted.

2. All vehicles and persons seeking admission to Avery Island must be identified at the toll gate as being properly entitled to enter the property, and vehicles entering the property shall be subject to inspection at the time of entering and upon leaving the property, Avery reserves the right to refuse admission to any vehicle previously involved in a violation of these rules.
3. No fire-arms of any kind may be brought on the property without the written permission of Avery.

4. Should any person or persons violate any of the above rules and regulations, Avery shall call the attention of International to such a violation, and in the event of a repetition of the violation of any of the above rules and regulations by said person or persons, Avery shall bring the same to the attention of International and shall advise International that thereafter such person or persons shall be refused admittance to Avery Island unless his, her or their presence on Avery Island shall be under the supervision of an acredited (sic) representative of International to insure compliance with all of the above rules and regulations.

5. No known criminal or undesirable person shall be admitted entrance to Avery Island at any time unless a court order, N.L.R.B. decision or arbitration decision under the agreement between International Salt Company and the International Chemical Workers provides otherwise.
6. Flagrant disregard or violation of the above or posted regulations which are acknowledged by International as being reasonable, or a moral conduct are recognized by both International and Avery as sufficient grounds to classify a person as undesirable.

3-B.
"In addition to the above described rules and regulations, the guard or gate keeper at the toll gate maintained by Avery Island, Inc. had received specific verbal instructions classified as rules by Avery Island, Inc. to keep persons in an intoxicated condition off of the International Salt Company mine premises.

3-C.
"The guard or gate keeper maintained at the only entrance to Avery Island by road was charged, in addition to the above described items, with issuing a decal identification sticker which is normally or frequently placed on the windshield of vehicles authorized to enter Avery Island.

3-D.
"The guard or gate keeper maintained at the toll gate entrance to Avery Island was *1179 additionally charged with selling permits to visitors to Avery Island who are not otherwise authorized to enter the premises. The described permit is in the form of a numbered ticket, imposing upon persons so permitted to enter, certain rules and regulations, violation of which is contractually deemed an act of trespass. The rules and regulations imposed upon paying visitors, not otherwise authorized to be on the premises, include the following, to-wit:
a. Admission is strictly for non-commercial purposes.
b. No fire-arms of any kind may be used on the property.
c. All vehicles entering the property do so with the express agreement on the part of the occupants to permit inspection of said vehicle by the company for improper contents before leaving.
d. The company reserves the right to refuse admission to any person it sees fit.
e. Violation of the above rules shall be considered an act of trespass.

3-E.
"Other than a game warden, resident of Avery Island, Inc., who enforces game regulations, and the occasional use of a radar gun for the enforcement of speeding regulations, the toll gate and guard or gate keeper maintained and employed by Avery Island, Inc. constitute the only means by which Avery Island, Inc. attempts enforcement of its rules and regulations.

3-F.
"At the time the defendant, Gilman Braquet, Jr., was admitted to Avery Island by the defendant guard, he had no authorized purpose for being on the premises; he had no personal identification authorizing him to enter; he had not displayed upon his vehicle the decal identification sticker authorizing his vehicle to enter the premises; he was not entering Avery Island for any touristic purposes; he was otherwise not known to the defendant guard; he was not an employee of International Salt Company, the McIlhenny Company, Avery Island, Inc., nor was he authorized or expected as a guest or business associate of any other person authorized to be on the premises.

3-G.
"The defendant, Gilman Braquet, Jr., at the time that he was admitted to Avery Island by the defendant guard, was highly intoxicated, having a blood alcohol level greatly in excess of .10 grams percent (.10g%). The defendant, Braquet, was also visibly intoxicated and visibly agitated.

3-H.
"The defendant guard, as well as being a direct employee of Avery Island, Inc., was supervised by officers and employees of both Avery Isalnd, (sic) Inc. and the McIlhenny Company; he should therefore be considered under the law as the joint employee of Avery Island, Inc. and the McIlhenny Company, or alternatively, the direct employee of both.

* * * * * *

5.
"Petitioner avers that Mayo Romero, Sr., the defendant guard, was guilty of negligence in not refusing admission to the defendant Braquet who was not authorized to secure entry upon the property of the defendant owner or in failing to turn back the defendant Braquet before he could inflict damages to the persons or properties of others who were, in fact, authorized to be on the grounds of the defendant owner; the defendant Romero was further negligent in not inquiring in more detail, as to his job requirements and his duties before undertaking the task for which he accepted employment; further, the defendant Romero failed to adequately inform himself as to Braquet's purpose for entering onto the defendant lessee's and defendant sublessee's property.

6.
"Petitioner further shows that the defendant guard, Mayo Romero, Sr., failed in his obligation to his employer, his employer's *1180 lessor and his fellow employees; that if he had performed those duties for which he was employed, the defendant, Braquet, would not have been allowed to enter onto the property of Avery Island, Inc. to commit an unlawful act; particularly, but not exclusively, the defendant guard:
a. Failed to protect the premises and to protect persons lawfully upon or authorized to be upon the property.
b. Failed to control the entry of unauthorized people.
c. Failed to adequately inspect the personal identification of the defendant, Braquet.
d. Failed to adequately inspect the vehicular identification on the vehicle of the defendant, Braquet.
e. Failed to keep out a trespasser.
f. Failed to prevent interference with the normal business activities of Avery Island, Inc., the McIlhenny Company, or the International Salt Company by a trespasser.
g. Failed to prevent the entry of a visibly or highly intoxicated person.
h. Failed to perceive or chose to ignore the obvious danger to the employees of International Salt Company and others by allowing a visibly intoxicated person on the premises.
i. Failed to perceive or chose to ignore the intoxicated condition of Braquet.
j. Failed to do or performed other acts of negligence which will be proved at the trial of this cause on the merits.

* * * * * *

6-B.
"Avery Island, Inc. leases a portion of the premises known as Avery Island to International Salt Company for industrial purposes, particularly, but not exclusively, for the mining of salt. Under the law and under the terms of the lease between the parties, Avery Island, Inc. was required to and responsible to maintain the leased premises in a condition fit for the use intended and to keep the sub-lessee in peaceable possession thereof. Avery Island, Inc. undertook to comply with that obligation by imposing and enforcing the rules and regulations hereinabove described. The failure to provide to International Salt Company and its employee Reginald Kane, premises free from the intrusion and intereference (sic) by any unauthorized persons was the cause of the dangerous condition which resulted in plaintiff's injury.

7.
"Petitioner further shows that the defendant owner, Avery Island, Inc., additionally contributed to the incident here sued upon by its:
a. Failure to properly educate its guard or gate keeper.
b. Failure to adequately train its guard or gate keeper in his duties to protect the premises and the persons on the premises.
c. Failure to require adequate identification of people and/or automobiles entering the premises.

d. Failure to enforce its rules and regulations with regard to proper identification of people and automobiles enter (sic) its premises.

e. Failure to provide to its guard a means for confirming the identification of people entering the premises.
f. Failure to provide to its guard an adequate description or list of persons authorized to enter the premises.
g. Failure to provide an adequate number of guards and guard locations.
h. Failure to generally protect the premises from intrusion by unauthorized persons.
i. Failure to prevent or require prevention of the entry of intoxicated persons on the premises.
j. Failure to enforce its reasonable rules and regulations with regard to access, ingress and egress to Avery Island, Inc.
k. Failure to perform other acts or performing other acts which contributed to the occurrence of the incident here sued upon, all of which will be proved at the trial of this cause on the merits.

*1181 7-A.

"Alternatively, petitioner shows that the defendants, Avery Island, Inc. and the McIlhenny Company, are strictly liable to the petitioner for the damages caused to him by the creation of an unreasonable risk of harm to petitioner by the defendant, Mayo Romero, Sr., in as much as Mayo Romero, Sr. is a person for whom Avery Island, Inc. and the McIlhenny Company are answerable and legally responsible, separate and apart from any direct negligence by Avery Island, Inc. or the McIlhenny Company.

7-B.
"Petitioner shows that the defendant Romero failed in his obligation to his employer, his employer's lessee and sublessee and your petitioner, who had every reason to believe that an unauthorized person would not be allowed on the defendant owner's property to commit an unlawful act.

8.
"The defendant owner should have had qualified security personnel or should have employed a supervisor to review the actions of their security personnel; certain rules should have issued or certain standards should have been fixed by the defendant owner for its security personnel so as to have an operating procedure to follow when an unauthorized vehicle or an unidentified person attempted to enter onto their property."
Generally speaking, it appears that the plaintiff contends his injuries resulted from negligence of Romero in failing to determine that Braquet had no authority to be on Avery Island and admitting him when he was an obvious danger to the plaintiff and other employees of International by reason of his intoxicated and agitated condition. The liability of Avery and McIlhenny is allegedly based on respondeat superior as the joint or direct employers of Romero. In addition, Avery is alleged to have been independently negligent in failing to enforce its rules and regulations against unauthorized persons being on the island and its inadequate training and supervision of its gate keeper as to his duties in this respect. The adoption and enforcement of such rules were allegedly undertaken by Avery in compliance with its obligations under law and its lease to International to maintain the premises in a condition fit for their intended use and in peaceable possession of International.
In consideration of an exception of no cause of action, of course, all well-pleaded allegations of fact are accepted as true, and if the allegations set forth a cause of action as to any part of the demand it must be overruled. The court should maintain a petition and afford the litigant an opportunity to present his evidence when it can reasonably do so. The exception cannot be sustained unless the allegations of the petition exclude every reasonable hypothesis of fact other than those showing the plaintiff cannot recover as a matter of law; that is, unless plaintiff has no cause of action under any evidence admissible under the allegations of the petition. Haskins v. Clary, 346 So.2d 193 (La.1977).
Considering these allegations most favorably toward the plaintiff, we are unable to conclude that the evidence admissible thereunder would establish a cause of action against the exceptors.
Under the prevailing duty-risk formula of tort liability, for the plaintiff to establish a cause of action against a defendant, the initial question that must be determined is whether there is a causal relation between his act or omission and the resulting injury to the plaintiff. If so, then it must be determined whether there is a duty on the part of the defendant to protect the plaintiff from the type of harm he suffered, and finally, whether there has been a breach of that duty. Owens v. New Orleans Maintenance, Inc., 349 So.2d 494 (La. App. 4 Cir. 1977).
As in Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972), where the plaintiff tripped over a ladder left by the defendant in an upright position on the *1182 premises but laid subsequently on the ground by a third person, if Romero had not permitted Braquet to pass through the gate onto the island the shooting would not have occurred. Therefore, it may be said that this had something to do with the harm. However, we are convinced that Romero's actions were not a substantial factor in causing the shooting.
Like the Supreme Court in Frank v. Pitre, 353 So.2d 1293 (La.1978), where a sheriff was exonerated from liability to a policeman who had been shot in a barroom by a prisoner that had been released from jail on a weekend pass, if it was negligence for Romero to admit Braquet to Avery Island under the circumstances alleged in this case we do not believe such act sufficiently contributed to the plaintiff's injury to create liability on the part of the exceptors. Also, see Ducote v. Voorhies, 350 So.2d 1289, 1292 (La.App. 3 Cir. 1977) wherein this court said:
"In order for the negligent conduct to be a cause in fact of plaintiff's harm, it must be shown to be a substantial factor in causing plaintiff's injury. Some direct relationship is required between the negligent conduct complained of and the resulting injury. The negligent conduct must be a necessary ingredient of the resulting injury. The injury must be the natural, probable and foreseeable consequence of the negligent conduct. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Laird v. Travelers Insurance Company, 263 La. 199, 267 So.2d 714 (1972); Jones v. Robbins, 289 So.2d 104 (La.1974)."
The mere fact that a person is intoxicated or agitated is no indication that he is going to shoot another person.
We are also convinced that there was no duty on the part of exceptors under these circumstances to protect the plaintiff from the type of harm which he suffered. Although Avery did install a gate keeper and attempted to maintain some control over the entry of persons on the island, there is no indication that it did so or that its rules and regulations were adopted for the benefit of International or its employees. On the other hand, we believe that such action was taken for its own benefit and it neither expressly nor impliedly agreed to protect International or its employees from any harm from third persons and particularly from harm resulting from their criminal conduct.
For these reasons, the judgment of the trial court sustaining the peremptory exception of no cause of action filed by Mayo Romero, Sr., McIlhenny Company and Avery Island, Inc. and dismissing this suit as to these defendants is affirmed. The costs of this appeal are assessed to the appellant.
AFFIRMED.