424 So.2d 336 (1982)
Clarence E. EVERETT, Jr.
v.
LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
No. 14824.
Court of Appeal of Louisiana, First Circuit.
November 16, 1982.
Rehearing Denied January 14, 1983.
*337 Hobart Pardue, Springfield, and Phillip Hagger, New Orleans, for plaintiffs Glen Murphy, E.L. Thornhill, Clarence Everett and Roy Payne.
Paul Due, Baton Rouge, for plaintiffs Elliot Watson, et al.
William J. Doran, Baton Rouge, for defendants Louisiana Dept. of Transp. and Development et al.
Before SHORTESS, SAVOIE and ELLIS, JJ.
SAVOIE, Judge.
Five cases were consolidated for trial (Numbers 14,822; 14,823; 14,824; 14,825; and 14,826). The Louisiana Department of Transportation and Development (Department) is a common defendant and appellant in each case, which stem from four different *338 automobile accidents, three of which involved single vehicles. The same approximate location is involved also: Louisiana Highway 43 in Livingston Parish, approximately 3.4 miles north of its intersection with U.S. Highway 190. In all four accidents, a southbound motorist left the roadway after failing to negotiate a curve. The curve was described as 400 feet long, turning through a delta angle of 20° to 30°, resulting in an estimated 5.9° curve. The road is 20 feet wide with 3 to 4 foot shoulders on each side. On the west side, the ditch is 12 to 14 feet from the road. On the east side, the ditch is flatter and its bank is about 22 feet off the road. The curve is not super-elevated and has an adverse crown.[1]
We dispose of these cases with separate opinions in order to promote a proper understanding of the factual situation surrounding each.
Defendant-appellant appeals the trial court's award of damages in tort. We affirm the holding of the trial court.
On the afternoon of April 15, 1978, Charles W. Coates, driving his 1973 Chevrolet pick-up truck south on La. Hwy. 43 in Livingston Parish, failed to negotiate a curve and ran off the road. The occupants of his truck were his wife, Rita Coates, and his two stepchildren, Danny Everett (age 8) and Tammy Everett (age 15). They had been swimming at the Tickfaw River Retreat picnic area and were enroute home at the time of the accident.
Louisiana State Police Trooper Roy Gilfour investigated the accident and testified that the road curved to the left going south; that it was dry and the surface was blacktopped; that there was approximately a 6 to 8 inch drop-off between the shoulder and the paved roadway; that Coates' vehicle left the roadway on the western side of the highway and traveled approximately 264 feet on the shoulder and along the ditch; that after traveling approximately 250 feet on the shoulder, Coates apparently started to straighten the vehicle in preparation for re-entry onto the highway; that the vehicle re-entered the highway, crossing both lanes sideways in an easterly direction for approximately 92 feet, leaving yaw marks as it crossed the highway; that it proceeded onto the northbound lane's shoulder, hit the ditch bank approximately 23 feet east of the highway, overturned and finally, came to rest on its top; that Mrs. Coates was killed in the accident; and that an advance warning sign indicating a 45 mile per hour speed limit ahead, just north of the accident site, was present.
Danny Everett testified that his stepfather had one or two beers prior to the accident. He further testified that as his stepfather drove into the curve, one or two tires ran off the road and then, as he went to "whip it" back onto the road, the truck went over to the other side and started flipping.
Tammy Everett, the other surviving passenger in the truck, described the accident as follows:
"Well, we were coming around the curve and both the wheels just kind of skidded off the side of the road and hit loose gravel. And he went to pull it back up on and whenever ... the front wheel came back on the gravel, but the back wheel didn't."
And
"And he went to pull the truck back up on the road and the back tire didn't come up. And it just caused the truck to turn around sideways and start flipping." (Emphasis added).
And
"The front wheel re-entered the highway and the back one ... he was pulling it back up on, but it wouldn't come up over the hook and it just skidded around. It wouldn't come up on the road. It just skidded around, turning it sideways."
And again,

*339 "Because when the truck came up, it was sideways in the road. Back where we had swung around, the truck turned sideways."
Upon cross examination, she also admitted that Mr. Coates had consumed beer during the day but was uncertain as to the exact amount. At the time of the accident, she testified that he either had a beer in his hand or between his legs.
Two samples of blood-alcohol content were taken from Mr. Coates. The first sample showed a blood-alcohol content of .103 per cent; the second sample a reading of .104 per cent. Mr. Coates subsequently pled guilty to driving while intoxicated. Trooper Gilfour stated that Mr. Coates admitted to him at the hospital in Hammond after the accident that he had been drinking prior thereto and that he had run off the road and had lost control of his vehicle.
Charles E. Everett, Jr., as natural tutor for his children, brought this action against the Department for wrongful death of their mother, Rita Coates.
Testimony also clearly indicates the Department had failed to erect any warning signs concerning the low shoulder despite a long history of accidents in this location.
The trial court, in written reasons for judgment, found the significant variation between the levels of paved roadway and the shoulder to be a proximate cause of the death of Mrs. Coates. Additionally, Mr. Coates' intoxication was held not to defeat the claim of the surviving heirs in their survival and wrongful death actions.
Appellant lists the following specifications of error:
"I. The trial court erred in its finding that there was present on the roadway at the time of these accidents, a condition which was patently and obviously dangerous to a driver exercising ordinary care and reasonable prudence.
"II. The trial court erred in failing to find the drivers of the various vehicles guilty of negligent conduct which was the sole cause of these accidents, or in the alternative, from finding these drivers to be guilty of contributory negligence, or in the further alternative, for failure to find that the recovery of these plaintiffs was barred by "victim fault" or fault of a third party which would constitute an intervening cause of these accidents and would bar recovery under any doctrine of strict liability.
"III. The trial court erred in failing to reduce any award to the Watsons by its virile share based upon the settlement of the Watsons with Travelers Insurance Company and United States Fidelity & Guaranty Company, or in the alternative, erred in failing to grant credit to the Department of Transportation for amounts paid as a result of these settlements.
"IV. The trial court erred in awarding to plaintiffs an excessive amount of damages."
Appellee has claimed damages both under strict liability and negligence. We find liability would attach under either theory of recovery.
Louisiana Civil Code Art. 2317 states:
"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody...."
One may recover on the basis of strict liability under L.S.A.-C.C. 2317 by showing (1) that the thing which caused the damage was in the care or custody of defendant, (2) that it had a vice or defect, that is, some condition which occasioned an unreasonable risk of injury, and (3) that the injury was caused by the defect. Jones v. City of Baton Rouge, etc., 388 So.2d 737, 739 (La. 1980).
"Highway" is defined as a public way for vehicular, mounted and pedestrian traffic, including the entire area dedicated thereto, and the bridges, culverts, structures, appurtenances, *340 and features necessary to or associated with its purposes. L.S.A.-R.S. 48:1(11). "Shoulder" is defined as that portion of the highway contiguous with the roadway for accommodation for stopped vehicles, emergency use, and lateral support of base and surface. L.S.A.-R.S. 48:1(21). La. Hwy. 43 is defined as a state highway. L.S.A.-R.S. 48:191. As such, the shoulder and road of La. Hwy. 43 are in the care and custody of the Louisiana Department of Transportation and Development (Department). Foggan v. Louisiana Department of Transportation and Development, 402 So.2d 154 (La.App. 1st Cir.1981).
The Department is under a duty to maintain safe highways and shoulders, that duty extending to protect the people who may foreseeably be placed in danger by an unreasonably dangerous condition. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980). Appellee is within the ambit of the Department's duty to maintain safe shoulders.
Appellee has proven by a preponderance of the evidence that the shoulder was defective. Testimony of Trooper Gilfour, Hubert Stilley, Kenneth Johnston, and Donald Ray Morrison supports such a finding. Trooper Gilfour testified there was approximately a six to eight inch drop-off between the shoulder and the paved roadway. Stilley, who lived only one mile east of the accident site, traveled the road several times a day. After observing an accident in the summer or fall of 1976 at this spot, he notified the Department about the low shoulders which, he felt, warranted repair. Kenneth Johnston, the Department's maintenance engineer, was in charge of an asphalt overlay project for La. Hwy. 43, which was completed March 3, 1976. He testified the asphalt applied to the highway raised its elevation by one and one-half inches. Donald Ray Morrison, with the Department's planning section, relying on his study, testified that from 1974 to 1978, there were eleven collisions at this location, most of which were one-car accidents. Additionally, no warning signs had been erected. The highway and its adjoining shoulder were a vice or defect that occasioned an unreasonable risk of injury.
Appellant asserts that the defect was not the sole proximate cause-in-fact of the injury sustained. Alternatively, appellant contends Mr. Coates' intoxication was the cause-in-fact and should preclude recovery. Testimony clearly indicates that the road's defect was a cause-in-fact of the accident. At best, this indicates an instance of concurrent causes.
This court recently determined liability in instances of concurrent causes. Sibley v. Menard, 398 So.2d 590 (La.App. 1st Cir. 1980), writ denied, 400 So.2d 211 (La.1981). In Sibley, the court found the Department's liability was not absolved by the concurrent substandard conduct of a third party who lost control of his truck while attempting to negotiate a curve. The test postulated for concurrent cause-in-fact is whether the negligent conduct is a "substantial factor in bringing about harm to another." Additionally, it is the proximate cause of the harm sustained even though negligence of others may have been attributed to the harm. Wall v. American Employers Insurance Company, 377 So.2d 369 (La.App. 2d Cir.1979), affirmed, 386 So.2d 79 (La.1980).
The instant to which we must address ourselves is the moment of re-entry of the Coates' vehicle on to the road. Trooper Gilfour testified that Mr. Coates appeared, from his investigation, to have straightened the vehicle out and attempted to re-enter the road when he lost control.
Tammy Everett testified that when Mr. Coates attempted to pull the truck back up on the road, the back tire did not come up. She stated that "it" just caused the truck to turn around sideways and start flipping. She further testified that it wouldn't come up over the hook and it just skidded around. The "it" to which Tammy Everett referred that caused the loss of control was the disparate levels between the shoulder and the paved roadway.
Great weight must be given to the factual conclusions reached by the trial court. Canter v. Koehring Co., 283 So.2d 716 (La.1973). This court may not substitute *341 its own evaluation and inferences for the reasonable evaluation and inferences of the trier of fact, unless those conclusions are clearly wrong. Abadie v. Morales, 391 So.2d 974 (La.App. 4th Cir.1980); Esta v. Dover Corp., 385 So.2d 439 (La.App. 1st Cir.1980), writ denied, 392 So.2d 690 (La. 1980). We find the trial court could reasonably conclude the disparate levels between shoulder and the paved roadway were a substantial factor and the cause-in-fact of the accident. Thus, appellee has proven a prima facie case of strict liability against the Department.
We now consider whether the Department could also be held liable on the grounds of negligence.
It is well settled in Louisiana that for a plaintiff to recover in negligence, he must prove: (1) that the act complained of was a cause-in-fact of the accident, (2) that the defendant had a duty, either statutory or non-statutory, to protect this plaintiff against the cause of harm complained of, (3) that the defendant breached this duty to protect this plaintiff, and (4) that the plaintiff was harmed by this breach of the duty owed. Mathews v. Elder International, et al, 400 So.2d 251 (La.App. 4th Cir.1981); Kane v. Braquet, 368 So.2d 1176 (La.App. 3rd Cir.1979), writ denied, 369 So.2d 1366 (La.1979); also see generally Pierrotti v. Associated Indemnity Corp., 399 So.2d 679 (La.App. 1st Cir.1981).
In the instant case, the trial court found as a matter of fact, that the defect in the shoulder was the cause-in-fact of the accident. Great weight is given the findings of the trial court, and only where its findings are clearly wrong will they be reversed. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
The Department has a duty to see that the highways are reasonably safe for persons exercising ordinary care and reasonable prudence. Sinitiere, supra; Smith v. State, Department of Transportation and Development, 412 So.2d 685 (La.App. 2d Cir.1982); Sibley v. Menard, 398 So.2d 590 (La.App. 1st Cir.1980), writ denied, 400 So.2d 211 (La.1981). Included within these duties of the Department is the maintenance of the shoulders of the highways in a reasonably safe condition. Rue v. State, Department of Highways, 372 So.2d 1197 (La.1979).
The scope of the Department's duty extends to protecting this motorist from this type of accident. Appellee is within the ambit of the Department's duty.
Appellee has shown by a preponderance of the evidence that the Department breached its duty by not leveling the shoulder[2]; that in 1976 Hubert Stilley informed the Department the curve required maintenance of the low shoulders; that this curve had a long history of accidents; and that no warning signs were present prior to the curve to warn motorists of the deep dropoff. These facts substantiate appellee's claim that the Department breached its duty to maintain a safe roadway.
It is uncontested that appellee sustained injuries as a result of the accident. Therefore, the trial court found appellee had proven a prima facie case of negligence against the Department. We agree.
Appellant alternatively contends that fault of a third party (i.e., Mr. Coates by reason of intoxication), appellee's assumption of the risk or appellee's contributory negligence should preclude recovery. We find such contentions without merit.
While a conflict exists between the Circuits as to the proper test to establish third party fault, appellant fails to carry his burden under either test. In Godwin v. Government Employees Insurance Company, 394 So.2d 751 (La.App. 3rd Cir.1981), the Third Circuit stated the fault of a third party must be the "sole cause" of the accident. As previously stated, at best, this case presents a situation of concurrent causes. Coates' intoxication was found not to *342 be the sole cause of the accident. Therefore, appellant fails to meet his burden under the "sole cause" test.
Our court in American Road Insurance Company v. Montgomery, 354 So.2d 656 (La.App. 1st Cir.1977), writs denied, 356 So.2d 430 (La.1978), 356 So.2d 434 (La.1978), 356 So.2d 435 (La.1978) established that third party fault sufficient to preclude recovery must be a "substantial factor." The trial court concluded that the shoulder's defect was a "substantial factor" in the accident, not Coates' intoxication. We may not substitute our own reasonable evaluations and inferences for the reasonable evaluations and inferences of the trier of fact, unless those conclusions are clearly erroneous. Abadie, supra; Esta, supra. And only in the case of clear wrong will the trial court be overruled. Arceneaux, supra.
The law is well settled in Louisiana that a "guest passenger riding with a driver who has been drinking excessively assumes the risk of injuries received in an accident caused in whole or in part by the driver's negligence, `if the alcohol-induced impairment of the driver's ability is a substantial contributory cause of the driver's negligence' and if the guest passenger `knows or should have known' of the driver's condition and nonetheless voluntarily rides with him." Marcotte v. Travelers Insurance Company, 258 La. 989, 249 So.2d 105 (1971), rehearing denied, June 28, 1971; Jones v. Continental Casualty Co., 246 La. 921, 169 So.2d 50 (1964); Powell v. Heck, 378 So.2d 582 (La. App. 3rd Cir.1979). The defendant bears the burden of proving by a preponderance of the evidence that the driver's intoxication was a "substantial factor" contributing to the accident. Marcotte, supra; Jones, supra.
In the instant case, the trial court found the shoulder's defect to be a "substantial factor" contributing to the accident. Absent clear error, the holding of the trial court will be affirmed. Arceneaux, supra.
Additionally, an exception to the general guest passenger rule provides that minor children in a vehicle with an intoxicated driver are not chargeable with "contributory negligence or assumption of the risk." Foy v. Ed Taussig, Inc., 220 So.2d 229 (La.App. 3rd Cir.1969). Therefore, the minor children are not barred from recovery.
The Department argues that the trial court erred in awarding excessive damages. In the award of damages, the trial court noted that Mrs. Coates lived a short period after the accident and was thus entitled to damages for pain and suffering in the amount of $10,000. This amount was to be distributed amongst the children. Danny Everett was awarded $100,000 for mental pain and suffering and loss of love and affection as was his sister, Tina Rogers. The trial court taking notice of the severe emotional trauma Tammy Everett suffered as a result of her mother's death, awarded her $175,000. Examination of the record indicates that the awards are well within the discretion of the trial court. Reck v. Stevens, 373 So.2d 498 (La.1979).
For the foregoing reasons, the trial court's award of compensation is justified in law and in fact and is hereby affirmed. Appellant is to pay all costs.
AFFIRMED.
SHORTESS, Judge, dissenting.
I respectfully dissent.
The Department of Highways in not a guarantor of the safety of all traveling motorists, but owes a duty to keep the highways and its shoulders reasonably safe for non-negligent motorists. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980). There must also be a causal relationship between any alleged wrongful conduct or breach of said duty and the resulting harm before liability can attach. Mixon v. Allstate Insurance Company, 300 So.2d 232 (La.App.2d Cir.1974), writ denied, 303 So.2d 179 (La. 1974). In order for negligent conduct to be a cause-in-fact of harm to another, it must be a substantial factor in bringing about that harm. Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). The facts of this accident do not reveal a non-negligent motorist, nor *343 do they show any act or omission on the part of the Department, whether sounding in negligence (La.C.C.2315) or strict liability (La.C.C.2317), which played a substantial role in causing this accident.
I feel that the majority ignores the facts surrounding this accident, which clearly support a finding that this accident was not caused by any negligence on the part of the Department. Rather, they hold that the Department is liable, regardless of any causal connection between the activity of the State and the accident.
A motorist is under a duty to drive prudently, which includes the duty to control his vehicle and to keep a proper lookout. Hebert v. Lefty's Moving Service, 389 So.2d 855 (La.App. 4th Cir.1980); Courtney v. Lambert Const. Co., Inc., 355 So.2d 72 (La. App. 1st Cir.1978), writ denied, 356 So.2d 430 (La.1978). There was no evidence presented that the paved roadway was itself defective in any way. The road was in good condition, and a driver exercising ordinary care and reasonable prudence should have easily negotiated that curve.
However, the record reveals the following facts: Both Danny Everett and his sister, Tammy, testified that their stepfather, Charles Coates, had been drinking prior to the accident. Tammy stated that he had consumed beer during the day; that he drank an 8-pack of 8-ounce Miller Ponies before they went swimming; that he had taken an ice chest with another 8-pack with him; and that there were a few beers left in the ice chest at the time of the accident. She also stated that at the time of the accident, Coates had a beer in his hand or between his legs. Coates himself admitted to Trooper Gilfour at the hospital after the accident that he had been drinking prior thereto, and stated that he had run off the road and lost control of his vehicle. Two blood samples were taken. One indicated Coates had a blood-alcohol content of .103% and the other revealed a content of .104%. Coates subsequently pled guilty to driving while intoxicated.
Secondly, both Danny and Tammy stated that Coates simply lost control as he rounded the curve. No emergency situation forced him off the highway; he just lost control, even before he reached the rut. Coates failed to maintain proper control, ran off the road, and traveled 264 feet before he re-entered the highway, crossed it and crashed into a ditch bank on the opposite side of the road. The length of travel, 264 feet[1], indicates that Coates was traveling at an excessive rate of speed. Had he been traveling at a proper speed, once on the shoulder he should have been able to slow his vehicle down and make a safe re-entry. The pictures introduced into evidence indicate that there were no obstructions to prevent him from gradually slowing down or coming to a complete stop if necessary, before maneuvering his vehicle back onto the highway. It is reasonable to conclude that the factors which may have contributed to Coates' loss of control, were his impairment from alcoholic consumption and his speed. "But for" Coates' failure to control his vehicle, this accident would not have happened. The shoulder defect played no substantial causal role in this accident.
Further, Coates' fault, under our holding in American Road Ins. Co. v. Montgomery, 354 So.2d 656 (La.App. 1st Cir.1977), writs denied, 356 So.2d 430, 434, 435, would have amounted to fault of a third party, thereby completely relieving the Department of any liability under La.C.C. art. 2317.
Accordingly, I dissent.
NOTES
[1] An adverse crown is present when the road slopes in the same direction as the centrifugal force. The centrifugal force, therefore, assists rather than opposes the force. In this case, the force created by the vehicle going through this curve would tend to throw the vehicle outward, and the adverse crown would tend to increase the outward force.
[2] It is to be noted that the shoulder's drop-off was accentuated by the Department's asphalt overlaying operation in 1975-76.
[1] The diagram in evidence reveals the vehicle's path after leaving the roadway was not in the defective part of the shoulder.