Joseph Eugene WELDON, Jr.,
Plaintiff-Appellant,

v.

The GREAT ATLANTIC AND PACIFIC
TEA COMPANY, Defendant-Appellee.

No. 86–3616.

United States Court of Appeals,
Fifth Circuit.

June 9, 1987.
Rehearing Denied July 6, 1987.

Michael J. Samanie, Samanie & Barnes, Houma, La., for plaintiff-appellant.

---

**5.** *See* 20 U.S.C. § 1412(2)(B) (1982).

**6.** *See* Tex.Educ.Code § 21.031(b) (Vernon 1987).

**7.** *See* Tex.Prob.Code Ann. § 114 (Vernon 1987).

Robert E. Peyton, Elizabeth S. Cordes, Christovich & Kearney, New Orleans, La., for defendant-appellee.

Before THORNBERRY, GEE and JONES, Circuit Judges.

PER CURIAM:

Plaintiff Weldon appeals from a summary judgment in favor of the defendant Great Atlantic and Pacific Tea Company. Although there is no serious dispute about the facts, viewed most favorably to Mr. Weldon, they are as follows:

About two years ago Mr. Weldon, who was recuperating from a knee injury, was running some errands after a visit to his physiotherapist. In the course of these, he rode his bicycle onto the large parking lot of a shopping center in which A & P rented a store, intending to buy a pack of cigarettes from the defendant. As he came onto the lot, about 150 yards from the A & P store, he saw a police car enter the lot on its far corner and heard a pistol shot. Weldon promptly dropped to the concrete behind a pickup truck, from which position he heard further shooting and observed two men run out of the A & P store. Fearing that the pickup behind which he was hiding might be the robbers' vehicle, he decided to take shelter in some service station restrooms which lay in the direction that the robbers had run, pursued by the police. As he—in effect—chased the moving fracas on his bicycle, he was taken in the left arm by a large-caliber pistol bullet and seriously injured. The bullet which struck him came from a pistol that belonged to the A & P store manager, taken from him and fired at the police by one of the robbers.[1]

Meanwhile, back at the store the manager lay wounded in the abdomen by a shot from the robbers' gun. According to a statement given by him in the hospital to an investigating detective, the manager had been shadowed by the robbers on his preceding two Friday trips to the bank to get money and had chosen, rather than to seek readily-available police protection, to arm himself with a large-caliber pistol. On the day of the shooting, he saw the robbers waiting in the parking lot, saw them follow him to the bank and back in a vehicle, and was watching them as he approached the store when a confederate of theirs who had been pretending to use a pay telephone in front of the store put a gun to his head and demanded the money. With this, the manager threw his pistol away, seeing a robber pick it up after he was shot by his original assailant. At about that time a police car cruised randomly onto the parking lot; and the robbers fired at it and fled, continuing their firing until Mr. Weldon was hit while in the service station parking lot on his way to hide in the restroom.

Such are the facts of the case. After considering them, the district judge concluded that Louisiana law imposes no duty upon a storekeeper either to protect potential patrons such as Mr. Weldon from injury by third parties off the premises of the store or not to carry a gun for personal protection which might be taken from him and used to injure another. So holding, he gave summary judgment for A & P. On appeal, Weldon contends that the actions of the store manager, in failing to take reasonable precaution in the face of obvious danger, were negligent and constituted the cause in fact of his injury. Conceding these matters for purposes of argument, the question of duty remains. We conclude that Louisiana recognizes none which extends so far and, so concluding, affirm the trial court.

Little purpose would be served by an elaborate treatment of Louisiana law in this diversity case, where we serve as adjuncts to the state courts and what we write is writ in water. As the experienced trial judge noted in his opinion, "[n]o Louisiana case has imposed upon a store owner a duty to protect potential patrons from third-party harm." The Louisiana cases

---

[1] This is more than somewhat doubtful, however we assume it in Mr. Weldon's favor, given the procedural posture of the case.

offered us by appellant Weldon to support the existence of such a duty concern actual patrons injured on the premises of the defendant, e.g., *Harris v. Pizza Hut,* 455 So.2d 1364 (La.1984). The sole exception is our own opinion in *Banks v. Hyatt Corp.,* 722 F.2d 214 (5th Cir.1984), which involved an actual patron—a registered hotel guest—but one who was killed while four feet off the premises, entering the hotel at a dangerous hour at a dangerous entrance. It is fair to conclude, as did the trial judge, that Louisiana recognizes a special duty to actual patrons in such a case as this only on the patronized businesses' premises or in their immediate vicinity. His legal conclusions are entitled to great weight, being those of a federal trial judge sitting in his own state and familiar with its jurisprudence, *Smith v. Mobil Corp.,* 719 F.2d 1313 (5th Cir.1983). We accord them such weight.

It is Louisiana law that "[g]enerally, there is no duty to protect others from the criminal activities of third persons." *Harris, supra* at 1371. The Louisiana courts have recognized a limited exception to this rule where actual patrons upon business premises are concerned, and we—by dint of great effort, in an opinion spanning 14 printed pages—have extended the scope of the exception four feet beyond them. If they are to be extended a football field and a half, to one who was merely planning to be a patron, Louisiana courts must do so, not us.[2] *Thompson v. Johns Manville Sales Corp.,* 714 F.2d 581 (5th Cir.1983).

AFFIRMED.

---

**2.** Mr. Weldon does not seriously contend that the mere use of the store manager's pistol renders his employer liable, and we therefore pre-termit discussion of such a "rolling stone" theory.