Thais CARRIERE, Widow of Samuel Carriere, IV, Individually and on Behalf of her Minor Child, et al., Plaintiffs–Appellants,

v.

SEARS, ROEBUCK AND COMPANY, et al., Defendants–Appellees.

No. 89–3089.

United States Court of Appeals, Fifth Circuit.

Feb. 2, 1990.

Rehearing Denied March 2, 1990.

M.H. Gertler, Gertler, Gertler & Vincent, New Orleans, La., for plaintiffs-appellants.

James A. Babst and Dona J. Dew, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for Sears, Roebuck & Co. and Allstate Ins. Co.

Robert E. Durgin and Terry J. Freiberger, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, La., for Connecticut Gen. Life Ins. Co., et al.

Before DAVIS and SMITH, Circuit Judges, and LITTLE, District Judge.[1]

W. EUGENE DAVIS, Circuit Judge:

The survivors of Samuel Carriere appeal the removal and eventual dismissal of their wrongful death and survival actions against a number of defendants. We affirm.

### I.

Samuel Carriere, a Sears, Roebuck and Company (Sears) security supervisor, was killed by unidentified assailants while he was investigating suspicious activity on the Sears loading dock. William McInnis, a part-time Sears security employee, was also on duty when the incident occurred.

The Sears store where this incident occurred is located in a shopping mall that is owned by a number of owners in distinct parcels. Sears owns the tract on which its store is located, and Connecticut General Life Insurance Company (Connecticut General) owns the adjoining tract. Sears handles its own security; Connecticut General contracted with Sizeler Real Estate Management Company (Sizeler), to provide the security on its property.

Carriere's survivors filed a state court action against McInnis, Sears, Connecticut General, and Sizeler. Two of the defendants, Sizeler and McInnis, were nondiverse. The diverse defendants removed the case and alleged that the plaintiffs had fraudulently joined the nondiverse defendants. Carriere made a timely motion to remand; Sizeler and Sears filed motions for summary judgment.

The district court set a single hearing date for both the motion to remand and the motions for summary judgment. Before the hearing on these motions, the plaintiffs sought a continuance to conduct further discovery. The trial court, noting that it had granted two previous motions to continue the hearing, denied a further continuance and went forward with the hearing. Finding that the nondiverse defendants were fraudulently joined, the district court

---

1. District Judge for the Western District of Loui-  siana, sitting by designation.

denied the motion to remand. The court then struck all of the plaintiffs' affidavits for various deficiencies and granted summary judgment to Sears and Sizeler.

The court also later granted Connecticut General's motion for summary judgment. Carriere's survivors in this appeal complain that the district court erred in: (1) denying their motion to remand; (2) refusing to continue the hearing to permit them to conduct further discovery; and (3) granting the summary judgment motions of Sizeler and Connecticut General.

## II.

### A.

■ The plaintiffs first contend that the district court erred in denying the motion to remand.[2] In particular, the plaintiffs complain of the district court's ruling that defendants McInnis and Sizeler were fraudulently joined to defeat federal jurisdiction. In the plaintiffs' view, the district court should have accepted the factual allegations of the original state court petition and should not have considered affidavits and depositions in deciding the merits of the motion to remand.

While we have frequently cautioned the district courts against pretrying a case to determine removal jurisdiction, we have also endorsed a summary judgment-like procedure for disposing of fraudulent joinder claims. In *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir.1981), we carefully discussed the procedures for assessing fraudulent joinder claims and noted that "the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment...." *Id.* at 549 n. 9. The *B., Inc.* court expressly authorized consideration of evidence outside of the pleadings:

In support of their removal petition, the defendants may submit affidavits and

deposition transcripts; and in support of their motion for remand, the plaintiff may submit affidavits and deposition transcripts along with the factual allegations contained in the verified complaint. *Id.* at 549. Similarly, in *Keating v. Shell Chemical Co.*, 610 F.2d 328 (5th Cir.1980), we approved "piercing the pleadings" to determine controlling state law for purposes of resolving fraudulent joinder questions. We remanded that case for a determination "[b]y summary judgment or otherwise" whether joinder was fraudulent. *Id.* at 333.

■ In short, this circuit treats fraudulent joinder claims as capable of summary determination. When determining fraudulent joinder, the district court may look to the facts as established by summary judgment evidence as well as the controlling state law. Hence, the trial court properly considered affidavits and depositions in ruling on the plaintiffs' motion to remand. We now turn to the plaintiffs' argument that the district court erred in determining that the nondiverse parties were fraudulently joined.

### B.

■ The removing party bears the burden of demonstrating fraudulent joinder. *Laughlin v. Prudential Ins. Co.*, 882 F.2d 187, 190 (5th Cir.1989). The diverse defendants in this case contend that the nondiverse defendants, McInnis and Sizeler, were fraudulently joined because the plaintiff had no possibility of obtaining judgment against them. The standard for judging fraudulent joinder claims of this sort is clearly established in this circuit: After all disputed questions of fact and all ambiguities in the controlling state law are resolved in favor of the nonremoving party, the court determines whether that party has any possibility of recovery against the party whose joinder is questioned. *B., Inc.*

---

**2.** Appellees, relying on Ninth Circuit authority, contend that because Carriere's survivors did not seek interlocutory review of the district court's denial of their motion to remand, they are now foreclosed from seeking such review. *See Johnson v. Mutual Benefit Life Ins. Co.*, 847 F.2d 600, 602–03 (9th Cir.1988); *Sorosky v. Bur-*

*roughs Corp.*, 826 F.2d 794, 798–99 (9th Cir. 1987). Our circuit has not adopted this position. We consider the plaintiffs' motion to remand sufficient objection to removal to preserve the point for later appeal after final judgment is entered. *Paxton v. Weaver*, 553 F.2d 936, 942 (5th Cir.1977).

v. *Miller Brewing Co.*, 663 F.2d at 551. We will examine defendants' claim of fraudulent joinder against each nondiverse party in turn.

### 1. McInnis

■ The defendants contend that joinder of William McInnis was fraudulent because McInnis, as Samuel Carriere's co-employee, is entitled to tort immunity under the Louisiana workers' compensation scheme. *See* La.Rev.Stat.Ann. § 23:1032. The plaintiffs argue that McInnis is not entitled to tort immunity because he committed an intentional act. We agree with the district court that the plaintiffs could not possibly recover against McInnis and that McInnis was therefore fraudulently joined.

An intentional act for purposes of Louisiana workers' compensation immunity means an intentional tort. *Bazley v. Tortorich*, 397 So.2d 475, 480 (La.1981). To prove "intent" under Louisiana law, the plaintiff must at least prove that the actor was substantially certain that harmful consequences would result from his conduct. *Mayer v. Valentine Sugars, Inc.*, 444 So.2d 618, 621 (La.1984).

The plaintiffs' original state court petition included an allegation that McInnis was "substantially certain" that his inaction would result in harm to Carriere. But McInnis, in his affidavit, stated that he saw Carriere leave the control room but had no knowledge where Carriere was going or that he was likely to be in danger. In opposition to this affidavit, plaintiffs rely on the affidavit of the police officer who investigated Carriere's murder. According to the officer, McInnis told him after the incident that he "should have" accompanied Carriere to the loading dock.

Construing, as we must, all disputed facts in the plaintiffs' favor, we still find no possibility of recovery by plaintiffs against McInnis on an intentional tort theory. The officer's affidavit, the only factual support for the plaintiffs' intentional act allegation, shows only that McInnis, after Carriere's tragic murder, wished he had accompanied Carriere to assist him. This is not enough to allow a factfinder to infer that McInnis

knew or was substantially certain that harm would befall Carriere. *See Kent v. Joma Products, Inc.*, 542 So.2d 99, 100–01 (La.App. Cir.1989); *Davis v. Southern Louisiana Insulations*, 539 So.2d 922, 924 (La.App.1989).

Thus, viewing the facts most favorably to the plaintiffs, they could not possibly recover from McInnis. We therefore agree with the trial court that McInnis was fraudulently joined.

### 2. Sizeler

■ The plaintiffs also sued Sizeler Real Estate Management Company on a theory that Sizeler failed to take reasonable measures to protect Carriere against a threat of criminal harm. Ordinarily, Louisiana law imposes no duty to protect against the criminal acts of third persons. *Harris v. Pizza Hut of Louisiana, Inc.*, 455 So.2d 1364, 1371 (La.1984). However, a duty to protect against foreseeable criminal misconduct may arise from a special relationship. For example, an innkeeper may be required, under some circumstances, to take reasonable measures to protect its guests against criminal activity. *Banks v. Hyatt*, 722 F.2d 214 (5th Cir.1984). Likewise, business owners must take reasonable steps to protect those who enter their premises from the foreseeable criminal acts of others. *See Harris*, 455 So.2d at 1369.

The plaintiffs do not argue that a special relationship existed between Sizeler and Sears security employees such as Carriere. However, relying on *Harris v. Pizza Hut*, the plaintiffs contend that because Sizeler guards crossed Sears' property during its patrol, had handled unspecified criminal incidents there, had changed light bulbs on the Sears lot, and had control over the source of power for Sears' parking lot lights, Sizeler assumed a duty to protect Carriere against criminals.

Carriere's reliance on *Harris* is misplaced. In *Harris*, the Louisiana Supreme Court found that Pizza Hut assumed a duty to protect customers on its premises when it provided a security guard. The case before us has none of the features of *Harris*. Sizeler had no relationship, special or otherwise, with Carriere. Carriere was not a Sizeler patron. Carriere was not on

Sizeler's "premises" when he was killed, but instead was on Sears' premises, which he had been hired to protect.

Most importantly, in *Harris,* the business owner had taken affirmative action to protect its patrons by hiring a security guard for that purpose. By contrast, the plaintiffs' evidence, viewed as favorably to them as possible, shows only that Sizeler personnel occasionally crossed the Sears parking lot and had some minimal involvement with lighting the entire parking area including that allotted to Sears.

This conduct by Sizeler employees is compatible with its efforts to protect Connecticut General's property as required by Sizeler's contract with Connecticut General. The facts do not support the conclusion that Sizeler assumed a duty to protect Sears property or personnel. *See Kane v. Braquet,* 368 So.2d 1176, 1182 (La.App.), *writ denied,* 369 So.2d 1366 (La.1979) (company did not assume a duty to protect third persons from criminal attack simply by taking security measures solely for its own benefit). The district court correctly concluded that the plaintiff had no possibility of recovering from Sizeler and that Sizeler was therefore fraudulently joined.

### III.

Appellants next raise a number of objections to the district court's rulings on appellees' motions for summary judgment.

### A.

■ The plaintiffs first argue that they had inadequate opportunity to conduct discovery before the hearing on the motions for summary judgment filed by Sears and Sizeler. The plaintiffs contend that under Rule 56(f), the district court should have granted them additional time to complete discovery before the summary judgment hearing. Denial of a continuance under Rule 56(f) is governed by an abuse of discretion standard. *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1193 (5th Cir.1986). We find no abuse of discretion.

This case was removed to federal court over four months before the hearing on the motions for summary judgment. The record reveals that the plaintiffs took little or no action toward completing discovery during this time.

The plaintiffs did not explain to the district court why they had not completed discovery in the time already allotted. The only justification the plaintiffs offered for an additional delay was that the district court had not yet ruled on the motion to remand. The plaintiffs were not, however, entitled to have the trial judge rule on the motions in any particular order. Therefore, the fact that a motion for remand was pending does not excuse failing to pursue discovery diligently. Under these circumstances, the district court did not abuse its discretion in denying the plaintiffs a further continuance.

### B.

■ Finally, the plaintiffs contend that Sizeler and Connecticut General were not entitled to summary judgment. To uphold a summary judgment, we must find that no genuine issue of material fact remained for trial and that judgment was proper as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Because we have already concluded that Sizeler was fraudulently joined, we need not consider appellant's argument on this point further. Summary judgment will always be appropriate in favor of a defendant against whom there is no possibility of recovery.

We also find that all of the plaintiffs' theories against Connecticut General are deficient. The plaintiffs first argue that Connecticut General could be vicariously liable for Sizeler's negligence. Since we have already determined that Sizeler owed no duty to Carriere, it is clear that no vicarious liability for Sizeler's fault would flow to Connecticut General.

Plaintiffs next argue that Connecticut General somehow assumed responsibility for security in the Sears loading area, and thereby assumed a duty to protect Carriere against criminal acts of others. But the plaintiffs offered no summary judgment evidence to support this argument. The available summary judgment evidence refutes this contention.

The plaintiffs' final argument seems to be that as the owner of a business premises, Connecticut General owed a duty to protect Carriere, the security guard on an adjacent premises, from the risk of criminal harm. We have already noted that Louisiana law under some circumstances imposes a duty on owners of business places to protect others against the risk of criminal harm. However, that duty has been extended beyond the actual business premises only in very rare circumstances, and then only when some specific relationship existed between the plaintiff and the defendant. *See Banks v. Hyatt*, 722 F.2d 214 (5th Cir.1984). *See also Weldon v. Great Atlantic & Pacific Tea Co.*, 818 F.2d 459, 461 (5th Cir.1987). Because Carriere was not on the Connecticut General premises when he was attacked, and because no special relationship existed between Carriere and Connecticut General, Connecticut General owed no duty to Carriere. Connecticut General was therefore entitled to judgment in its favor as a matter of law.

AFFIRMED.