583 So.2d 1166 (1991)
Johnny E. WELLONS
v.
Eddie Lee GRAYSON, George H. Guillory, Jr., Henry B. King, Edwin C. Scott, Empire Legal Services, and the ABC Insurance Company.
No. CA 90 0430.
Court of Appeal of Louisiana, First Circuit.
June 27, 1991.
Writ Denied November 1, 1991.
*1167 Robert H. Marve, III, Baton Rouge, for plaintiff-appellant, Johnny E. Wellons.
John J. Price, Baton Rouge, for defendants-appellees, George H. Guillory, Jr., Henry B. King, Edwin C. Scott, Empire Legal Services, Empire Legal Center, King and Scott, and State Farm Fire & Cas. Ins. Co.
Before COVINGTON, C.J., LANIER and GONZALES, JJ.
COVINGTON, Chief Judge.
Johnny E. Wellons, plaintiff, brought suit against defendants Eddie Lee Grayson, George H. Guillory, Jr., Henry B. King, Edwin C. Scott, Empire Legal Services, and the ABC Insurance Company for personal injuries he sustained in an incident occurring on May 13, 1987, involving Scott, an attorney, and Scott's former client Grayson. Summary judgment was entered for defendants George H. Gillory, Jr., Henry B. King, and Edwin C. Scott, also doing business as Empire Legal Services, Empire Legal Center and Guillory, King & Scott; and for State Farm Fire and Casualty Insurance Company, who afforded general liability and business liability insurance coverage for defendants. From this judgment, plaintiff appeals.
On May 13, 1987, plaintiff, an attorney whose office was located at 1160 Florida Street, in Baton Rouge, Louisiana, was standing on the front porch of his office discussing a case with his law partner, when defendant Scott, whose office was immediately adjacent to that of plaintiff's, at 1150 Florida Street, came out to the front porch of his office with his former client, Eddie Lee Grayson. Both plaintiff and defendants separately leased their respective premises; the porches of the two buildings were approximately eight feet apart.
Scott had previously represented Grayson in a criminal proceeding as part of his duties as Assistant Public Defender in City Court in Baton Rouge, and Grayson had later retained Scott to represent him in a civil matter. Grayson discharged Scott and retained new counsel some six months before the incident at issue in this lawsuit, and a dispute had arisen between Scott and Grayson concerning the return of a retainer fee of $75.00 which Grayson had paid to Scott. Grayson had telephoned Scott's office and had visited, unannounced, on several occasions, demanding the return of his money. Scott had learned during his earlier representation of Grayson that he had been hospitalized in mental institutions and was mentally unstable.
On May 13, 1987, Grayson had arrived at Scott's office and once again demanded the return of the retainer fee. Because he had a client waiting to see him when he came downstairs and saw Grayson, Scott asked Grayson to step outside on the porch with him. The two men were talking, and Grayson demanded the return of $75.00. Scott *1168 refused, and Grayson, saying "I'll get my money," went into his waistband with his right hand and pulled out a gun wrapped in a white handkerchief. Grayson shot once, and he and Scott began wrestling on the porch; they fell, and while the two were fighting on the ground, Grayson shot an additional three times. Scott, realizing he could not get the gun away from Grayson, jumped back on the porch and ran into the office building; one more shot was fired at that point by Grayson. A constable from City Court, located down the street from Scott's office, heard the shots, saw Grayson running down the street, and apprehended him. Grayson was charged with attempted murder, but was found mentally incompetent to stand trial.
In the meantime, plaintiff and his law partner witnessed the entire episode. Plaintiff testified in his deposition, as did his law partner, Gail McKay, that Scott was "intimidating" Grayson and hollering, screaming, and "talking all kind of crazy talk" to him. Scott was physically larger than Grayson. Scott testified he spoke calmly to Grayson.
When Grayson shot at Scott the first time, McKay ran for the door of their office; plaintiff turned and ran away from the direction of the gunshots. While running, he fell off the porch, sustaining serious injuries to his leg. He heard five more shots. Convinced that McKay and Scott, who were both unarmed, were dead, he crawled under the side of his porch on his uninjured leg to hide from Grayson. An ambulance arrived about fifteen minutes later and extricated plaintiff from under the porch. Plaintiff was hospitalized for three weeks after his accident; his injuries included a shattered kneecap and several broken bones in his leg.
Plaintiff alleged in his amended petition that defendants were aware of the criminal history and mental condition of Grayson and failed to take action to avoid the incident; that they failed to have Grayson removed from the premises by the police; that they caused the incident which resulted in an unreasonable risk of injury; that they conducted their business affairs in such a way as to allow such an incident to occur; and that defendants were members of a partnership. Defendants moved for summary judgment, arguing first that no duty was owed to plaintiff because his injury was not sustained on defendants' premises; second, that even if plaintiff were a business invitee or guest of defendants, no duty would be owed to protect him from the unforeseeable, unanticipated criminal acts of an independent third person. The trial judge held for defendants, stating, in oral reasons for judgment, that there was no duty owed to plaintiff because Grayson's acts were not reasonably foreseeable by defendants.
Carriere v. Sears, Roebuck and Company, 893 F.2d 98 (5th Cir.), cert. denied, ___ U.S. ___, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990), addressed the issue of the duty of an adjacent landowner to protect others from harm arising from the criminal acts of a third party. In that case, a security guard (Carriere) employed by Sears was killed while investigating suspicious activity on the Sears loading dock. Plaintiffs sued the adjoining landowners (Connecticut General) and the real estate managing company for the adjoining landowners (Sizeler), alleging that Sizeler failed to take reasonable action to protect Carriere from a threat of criminal harm; even though no special relationship existed between Sizeler and Carriere which would give rise to a duty, plaintiffs argued that Sizeler had undertaken a duty to protect Carriere against criminals, citing Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984).
The Fifth Circuit held that Carriere had no relationship whatsoever with Sizeler, and was not on their premises when he was killed; therefore, Sizeler could not owe a duty to him. Plaintiffs also argued, however, that because Connecticut General owned a business, it owed a duty to protect Carriere, who was the security guard on adjacent premises, from the risk of criminal harm. The Fifth Circuit, citing Banks v. Hyatt Corp., 722 F.2d 214 (5th Cir.1984), noted that in some circumstances a duty might be imposed on business owners to protect against the risk of criminal harm; however, some special relationship must *1169 exist in order for that duty to arise. In Carriere, the victim was neither on Connecticut General's premises, nor was there any special relationship between him and Connecticut General; therefore, there was no duty owed to him. Carriere, 893 F.2d 98, at 101, 102.
In the instant case, no relationship at all existed between plaintiff and defendants; as in Carriere, there was neither a business invitee/invitor relationship, nor the "special relationship" discussed in Banks of innkeeper/guest. In any event, such a duty would only arise were it shown that the independent criminal acts of a third party were foreseeable, either by a showing of awareness of a pattern of such activity in the past, or by a showing that there was some reason to expect a criminal act on the part of a particular individual. Banks v. Hyatt Corporation, 722 F.2d 214, at 220; see Willie v. American Casualty Company, 547 So.2d 1075 (La.App. 1st Cir. 1989), remanded on other grounds, 553 So.2d 467, on remand to 576 So.2d 1023 (La.1991).
Plaintiff cites Hakim v. Albritton, 552 So.2d 548 (La.App. 2d Cir.1989), to support his position that a duty may be owed to persons on adjacent premises to prevent injury to them. In Hakim, the court held that a genuine issue of material fact existed as to whether a landowner had a duty to protect passing motorists from the hazards of congested traffic on his property. Hakim, however, did not involve the risk of injury by the unforeseeable criminal acts of a third party. In Hakim, the duty not to obstruct roadways was already well-established. Hakim, 552 So.2d at 551.
No facts whatsoever in the record establish that Grayson's action in shooting Scott was in any way foreseeable by him. Although Scott was aware of Grayson's past mental problems and criminal record, plaintiff presented no further evidence to indicate that defendants knew Grayson was armed, or that he would attempt to shoot Scott. Defendants' secretary testified that she believed Grayson was mentally deficient, but not that he was capable of violence. Obviously Scott, had he been aware of Grayson's propensity for violence, would have taken the precaution of arming himself against him, or of evicting Grayson from his premises.
When there is no factual dispute, and no credibility determination is required, the question of the existence of a duty is a legal question, to be determined by the trial court. Defendants are entitled to summary judgment as a matter of law because they owed no duty to plaintiff.
For the foregoing reasons, this case is affirmed. All costs are to be assessed to plaintiff.
AFFIRMED.