Willie B. KEATING, Plaintiff-Appellant,

v.

SHELL CHEMICAL COMPANY et al.,
Defendants-Appellees.

Willie B. KEATING, Plaintiff-Appellant,

v.

Herbert L. BENSON et al.,
Defendants-Appellees.

Nos. 79–1574, 79–2616
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Jan. 24, 1980.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Daniel E. Becnel, Jr., Reserve, La., for plaintiff-appellant.

Adams & Reese, James E. Blazek, New Orleans, La., for Shell Chemical Co.

Before BROWN, TJOFLAT and FRANK M. JOHNSON, Jr., Circuit Judges.

PER CURIAM:

Willie B. Keating appeals the District Court's denial of his motion to remand his tort lawsuit to Louisiana State Court after it was removed to Federal District Court upon motion of defendant Shell Oil Company. He also appeals the District Court's subsequent dismissal of his suit against all but one defendant. We affirm in part and vacate and remand in part.

## I. The Facts

Keating was employed at the Shell Chemical Company plant site in Norco, Louisiana. While performing his job he was caught in a flash fire, resulting in second and third degree burns over 85% of his body. He

sued for damages in state court,[1] alleging the joint and concurrent negligence of the defendants, Shell Chemical Company,[2] Shell's executive officers, D. E. Torres, C. J. LeCompte, H. M. Miller and J. D. Ramsey, the Ford Motor Company, Westhollow Research Lab, Inc.,[3] and its employee Herbert L. Benson.[4]

Upon motion of defendant Shell Oil Company, the state court lawsuit was removed to Federal District Court in the Eastern District of Louisiana on the basis of diversity jurisdiction.[5] Keating filed a motion to remand because of incomplete diversity. Although Keating was diverse from Shell and Ford, he and all four executive officers of Shell were domiciled in Louisiana. Shell argued that there was no claim against these executive officers and that they had been fraudulently joined to defeat diversity jurisdiction. The District Court agreed and refused to remand.[6] The motions of defendants Shell, its executive officers and defendant Benson to dismiss for failure to state a claim upon which relief could be granted, under F.R.Civ.P. 12(b)(6), were also granted.[7]

## II. LSA R.S. 23:1032—Immunity From Tort Liability For Non-Intentional Torts Of Officers And Employees

Both of these rulings were based on the statutory exemption from negligent tort liability granted to a plaintiff employee's employer and its officers and employees under LSA R.S. 23:1032.[8] This provision limits an injured employee's right of recovery against such defendants to Workmen's Compensation. Keating argued that the tort liability exemption was inapplicable because the torts of the defendants were allegedly intentional.

The District Court held that, although Keating had alleged intentional torts by these defendants, the rest of the language of his petition indicated that there was no way he could have proven the torts were intentional and beyond the scope of the § 1032 exemption. In so holding, the District Court relied on *Guidry v. Aetna Casualty and Surety Co.,* La.App. 1st Cir., 359

---

1. No. 19,414 "A," filed August 28, 1979 in the Twenty-Ninth Judicial District Court for the Parish of St. Charles, State of Louisiana.

2. This was an incorrect designation. The true defendant was Shell Oil Company.

3. This was also incorrect. There is no such company; the laboratory was owned by Shell Oil Company. Consequently, the suit against Westhollow as such was dismissed.

4. Benson is actually an employee of Shell Oil Company.

 Keating brought a similar suit, in diversity in Federal District Court, C.A. No. 78–2342 "I," in the Eastern District of Louisiana, against Shell, its executive officers and various John Does who might be found liable for his injuries.

5. C.A. No. 78–3290 "B."

6. This ruling is the subject of Appeal No. 79–2616 in this Court.

7. This ruling is the subject of Appeal No. 79–1574 in this Court.

8. § 1032. Exclusiveness of rights and remedies; employer's liability to prosecution under other laws

 The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.

 Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.

 The immunity from civil liability provided by this Section shall not extend to: 1) any officer, director, stockholder, partner or employee of such employer or principal who is not engaged at the time of the injury in the normal course and scope of his employment; and 2) to the liability of any partner in a partnership which has been formed for the purpose of evading any of the provisions of this Section.

 Amended by Acts 1976, No. 147, § 1.

So.2d 637, *cert. denied,* 1978, La., 362 So.2d 578, which established that, in order to assert the requisite intent to invoke the exception to the tort liability exemption of § 1032, the plaintiff must allege "the defendant * * * entertained a desire to bring about the result which followed and * * * believed that the result was substantially certain to follow." *Id.* at 638.

The Court concluded that "on all of the statements of intentional negligence set forth in the complaint and as amplified by Counsel for the Plaintiff during colloquy today, that [the allegations in] no way could approach the meaning of intentional negligence which would vitiate the provisions of Louisiana law which prohibits (sic) suits against executive officers as defined by the Louisiana Courts and in the *Guidry* case and as supported by the legislative history of that recent Louisiana legislative act which was designed to eliminate executive officer actions. * * * ." Therefore, the executive officers were fraudulently joined to defeat diversity and, not only was removal to federal court proper, but the claims against Shell, the executive officers and Benson were insubstantial enough to be dismissed.

Keating contends that, in refusing to remand, the District Court "pre-tried" the case on its merits by reaching the issue of statutory exemption under § 1032. He argues that, instead, the District Court should have looked no further than the face of the complaint, and remanded because of incomplete diversity.

▮ Keating mistakenly characterizes the issue as a conflict between the detailed fact pleading required by Louisiana Code of

Civil Procedure Article 854 [9] and the notice pleading of F.R.Civ.P. 8(a).[10] He contends that, since the question of the form of pleadings is procedural, the federal rules should apply in federal court, and the Court should not even look to § 1032 and the rule of *Guidry* to determine the sufficiency of the pleadings.

We cannot agree. First of all, the District Court must refer to the allegations in the plaintiff's state court pleadings to determine if removal is proper. *Pullman Co. v. Jenkins,* 1939, 305 U.S. 534, 537, 59 S.Ct. 347, 349, 83 L.Ed. 334, 338.

In ruling that Keating's state court petition did not really allege the requisite intentional tort, the District Court was not imposing Louisiana state law pleading requirements on a federal court complaint. What the District Court was doing, and properly so, was "piercing the pleadings" to determine if the joinder was fraudulent, that is, whether under any set of facts alleged in the petition, a claim against the defendants could be asserted under Louisiana law. *Dodd v. Fawcett Publications,* 1964, 10 Cir., 329 F.2d 82, 85. This can be done only by referring to the state law which controls on the substantive issues and which will ultimately determine whether a cause of action exists. *Park v. New York Times Company,* 1962, 5 Cir., 308 F.2d 474, 478, quoting *Chicago, Rock Island & Pacific Railway Ry. Co. v. Schwyhart,* 1913, 227 U.S. 184, 33 S.Ct. 250, 57 L.Ed. 473 (Justice Holmes).

▮ Whether reference to state law amounts to "pre-trying" the case is always

---

9. **Art. 854. Form of pleading**
 No technical forms of pleading are required. All allegations of fact of the petition, exceptions, or answer shall be simple, concise, and direct, and shall be set forth in numbered paragraphs. As far as practicable, the contents of each paragraph shall be limited to a single set of circumstances.

10. **Rule 8. General Rules of Pleading**
 (a) **Claims for Relief.** A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party

claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded.

a question of degree. If there is any possibility that the facts the plaintiff alleges could support a claim, then a dismissal under Rule 12(b)(6) is improper. But when the lack of a state law claim is apparent, dismissal at this point in the proceedings does not constitute a premature trial on the merits.

This Court has recently addressed these issues in a case with similar facts, *Tedder v. F. M. C. Corporation,* 1979, 5 Cir., 590 F.2d 115. An injured employee sued the officers, directors and employees of his employer, as well as the equipment manufacturer, in tort in state court. The action was removed to federal court. This Court's interpretation of § 1032 supported the denial of a motion to remand on the basis of incomplete diversity and the granting of a Rule 12(b)(6) dismissal. Although Tedder's petition did not even mention intent, whereas Keating's did, we nevertheless find the *Tedder* case controlling.

 The claims against Shell and its executive officers, which are at issue here, are as follows:

Paragraph XIV, § 5: That the aforesaid individuals created a foreseeable danger to workmen working in the area which was clearly in violation of all concepts of safe design, manufacture, and/or construction. Further, they failed to provide a safe place in which to work or provide adequate warnings to keep vehicles out of the premises. Further, they provided defectively designed equipment which did not properly function and therefore, their knowledge of the defects and their continuing to operate said equipment in C–Unit constitute an intentional act and/or tort on their part which does not come under R.S. 23:1032.2, which limits executive officer remedies.

Paragraph XIV, § 7: The aforesaid individuals and/or executive officers of the Shell Chemical Company are sued herein under the provisions of R.S. 23:1032, Paragraph 2, and their acts constitute an intentional act, since their knowledge of the aforementioned unsafe condition was a continuing one and no actions were taken to correct or alleviate the unsafe and/or foreseeable condition.

We must agree with the District Court that these allegations do not amount to colorable claims of intentional torts.

Keating argues that the degree of negligence alleged in these paragraphs was so high and the likelihood of an accident so foreseeable, that the torts committed by these defendants were intentional. To accept this argument would be to stretch the meaning of "intent" much too far. Although the line between a highly foreseeable risk and an intentional tort often grows thin, it has always been deemed to exist:

On the other hand, the mere knowledge and appreciation of a risk, short of substantial certainty, is not the equivalent of intent. The defendant who acts in the belief or consciousness that he is causing an appreciable risk of harm to another may be negligent, and if the risk is great his conduct may be characterized as reckless or wanton, but it is not classed as an intentional wrong. In such cases the distinction between intent and negligence obviously is a matter of degree. Apparently the line has been drawn by the courts at the point where the known danger ceases to be only a foreseeable risk which a reasonable man would avoid, and becomes a substantial certainty.

Prosser, Law of Torts, 4th Ed. 1971, at 32. And *Guidry, supra,* clearly dictates that nothing short of an intentional tort, that is, intent to bring about the event which occurred, will bar exemption from tort liability under § 1032. Keating's claims against Shell and its executive officers and Benson may amount to gross negligence at most, but Keating does not state that the damage of the accident was a substantial certainty. The use of the word "intent" in these paragraphs is not a talisman that can change the allegations into colorable claims of true intentional torts.

*III. The Other Exception To Tort Liability Immunity Under § 1032: Course And Scope Of Employment*

Inasmuch as Keating's appeal from this ruling is based on a contention that the allegations against Benson constitute an intentional tort, we affirm the dismissal, based on the reasoning set forth above. However, Keating also argues that, even if Benson's actions were not intentional, they were outside the "normal course and scope of his employment" because he was driving in an unauthorized area of the plant and because he was at work before his shift began.

The allegations against the Shell employee Benson were:

*Paragraph XIV § 1:* That Herbert L. Benson, Individually and his employer Westhollow Research Lab, Inc., operated a 1978 Ford Fairmont, Serial number T734396, in an unauthorized area of the Shell Chemical Company plant site, which was the ignition source which caused the fire that resulted in the serious burns to your petitioner, Willie B. Keating.

*Paragraph XIV § 2:* That Herbert L. Benson, Individually and his employer, Westhollow Research Lab, Inc., used an unsafe piece of equipment, namely, a 1978 Ford Fairmont, in a manner which created an unsafe condition at the Shell Chemical Company plant site which resulted in a fire and serious personal injuries.

More specifically, Benson arrived at work thirty minutes to an hour before his shift was to begin. It was customary to arrive early. He was driving into the area of the situs of the accident, where he usually parked his car. Keating contends that the heat from the engine of the car ignited chemical fumes in the air and caused the explosion.

■ Although The District Court did not address the issue of this second exception to tort immunity under § 1032, it was presented in Keating's memorandum in opposition to the motion to dismiss and argued at the hearing on the motion. We have found a recent Louisiana case, *Waggoner v. Kellogg-Moore Oil Company, Inc.,* La.App. 2d Cir., 375 So.2d 197, 1979, which interprets "course and scope of employment" within the context of § 1032 and a set of facts quite similar to those of the case before us. The Court refused to construe the term as meaning that, just because an accident occurs at a time before a defendant employee begins his shift of duty, this does not necessarily mean that he is not within the scope of his employment. It must also be alleged that the acts of negligence attributed to the employee were not those usually done within the scope of employment.

■ Although the record in this case and this recent Louisiana decision would indicate Benson could very well have been within the course of his employment when the accident occurred, despite the fact that he was not on duty at the time of the accident, it is still not clear to us "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 1957, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84. It is possible that Keating may be able to prove that Benson was not engaged in these activities within the § 1032 course and scope of his employment, in which case § 1032 tort immunity would not apply, and there could be a colorable claim against Benson under Louisiana law.

Therefore, we affirm the ruling of the District Court on the issue of exemption from § 1032 tort liability immunity for intentional torts. However, we vacate and remand for a suitable determination of whether Benson was acting within the § 1032 course and scope of his employment at the time of the accident. As we have frequently cautioned, this does not presage a full dress trial on the merits. By summary judgment or otherwise the Trial Court may properly determine that on facts which are uncontradicted, or impliedly found most favorable to Keating, Benson could not, as a matter of Louisiana law, be outside the § 1032 course and scope of his employment.

**334**

AFFIRMED IN PART and VACATED and REMANDED IN PART.