[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT WELTON'S MOTION TO STRIKE
This case arises from the plaintiff, Mark Barton's ("Barton"), alleged demotion by his employer, defendant Ford, Bacon and Davis Sealants, Inc. ("Ford"), after he failed a company drug test he was required to undergo by Ford's Operations Manager, defendant Gordon Welton ("Welton"), without advance warning that the test was going to be given. According to Barton, Ford's announced policy and established practice prior to administering the test in question was to advise its employees in advance of any planned test so that they could avoid testing positive for drugs. Against this background, Barton claims in the first four counts of his second revised complaint ("complaint") that by testing him without warning, Ford breached its contract with him, negligently misrepresented its drug-testing policy to him, negligently inflicted emotional harm upon him and invaded his privacy.
In the last three counts of his complaint, Barton alleges that Welton, by failing to warn him of the impending drug test, tortiously interfered with his employment, negligently inflicted emotional harm upon him and invaded his privacy.
At a September 13, 1993 hearing on the motions of defendants Ford and Welton to strike all counts of the second revised complaint, the defendants argued and the plaintiff agreed that as currently pleaded, Counts One through Four, Six and Seven of the complaint all state causes of action which are barred by the exclusivity provisions of the Connecticut Workers Compensation Act, General Statutes 31-284a. For the reasons stated on the record at that hearing, each of those counts was hereby stricken by agreement.
Having reserved decision on defendant Welton's motion to strike the fifth count of the complaint, alleging tortious interference with Barton's employment, the Court now rules that that count also must be stricken.
I. CT Page 9218
The purpose of a motion to strike is "to contest the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170 (1988). The motion to strike admits all facts well-pleaded and those facts necessarily implied from the allegations. D'Ulisse-Cupo v. Board of Directors, 202 Conn. 206, 208 (1987). It does not, however, admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. Blancato v. Feldspar Corp.,203 Conn. 34, 37 (1987). The Court must construe the facts alleged in the manner most favorable to the pleader. Gordon, supra at 170.
 II.
Defendant Welton advances two grounds in support of his motion to strike the fifth count of the complaint. The first is that it fails to allege all the essential elements of tortious interference with employment.
To support a claim of tortious interference with employment, the plaintiff must allege and be prepared to prove that the defendant actually interfered with or disturbed his employee-employer relationship, that he did so intentionally, and that he did so either as for some improper motive or by some improper means. Blake v. Levy,191 Conn. 257, 261 (1983). Though proof that the defendant interfered with the plaintiff's employment relationship by fraud, misrepresentation, intimidation, molestation or other malicious conduct is certainly adequate to support a claim of tortious interference with employment, id. at 261, less culpable interferences with that relationship are simply not actionable on this theory. Weiss Associates, Inc. v. Underlight, 208 Conn. 525, 536 (1988) (citing Jones v. O'Connell, 189 Conn. 648, 660-661).
In determining whether the conduct by which the defendant is alleged to have interfered with the plaintiff's relationship with his employer was so "improper" as to constitute tortious interference with employment, this Court "must weigh [the] competing personal and community interests involved." Blake, supra at 262. Among those interests are the factors specifically listed in 4 Restatement (Second), Torts 767 (1979): CT Page 9219
(a) the nature of the actor's conduct,
(b) the actor's motive,
 (c) the interests of the other with which the actor's conduct interferes,
 (d) the interests sought to be advanced by the actor,
 (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
 (f) the proximity or remoteness of the actor's conduct to the interference, and,
(g) the relations between the parties.
Blake, supra at 263, n. 3.
To properly assess of the interplay of these factors in ruling on a motion to strike, the Court must focus on the specific allegations of the challenged count.
In his fifth count, the plaintiff alleges that defendant Welton was a one-time personal friend of his who "became unfriendly to [him] and jealous of him," and therefore "purposely did not follow Ford's policy or his [own] policy" of giving advance notice of the drug test "in order to satisfy his personal feelings towards the Plaintiff." Welton's actions, he further alleges, were taken "improperly for personal gain."
It is clear from the plaintiff's complaint that defendant Welton's alleged failure to warn him of the drug test was intentional, for it is claimed to have been motivated by Welton's negative personal feelings towards the plaintiff and his desire for unspecified personal gain. It is equally clear, however, that even if Welton is shown to have been so motivated when he acted, nothing he did or is alleged to have done can reasonably be found to have been "improper" in view of the "competing personal and community interests" involved. Blake. CT Page 9220
The presence of drugs in the workplace is one of the great problems of our era. Modern employers worry, with good reason, that their workers will be less safe in the workplace and less productive in their work when either they or their co-workers come to the workplace with their mental and/or physical capabilities impaired by the use of drugs. To root out this problem, many companies, like defendant Ford, have instituted random drug-testing policies for their employees. The dual purpose of these programs is as follows: to identify workers who have substance abuse problems in order that they can be treated and either returned to their jobs, reassigned or released; and to deter employees who use drugs in their spare time from using them at any time when it might affect their performance on the job. The key to the successful implementation of any drug-testing program is obviously its randomness, for if advance notification of testing were given, the tests would readily be passed by all but the most careless or hopelessly addicted employees, and the testing program would largely fail either to detect or to deter potentially dangerous and disruptive drug use by employees.
Against this background, it is difficult to imagine why any company which initiates a drug-testing program would simultaneously adopt the practice of notifying its employees in advance of drug testing. Assuming, however, that the plaintiff's allegations are true, the most that can be said of defendant Welton's alleged conduct is that it put teeth in a toothless policy, and thereby protected both Ford and its employees from the dangers and difficulties posed by drug abusers, in this case Plaintiff Barton, in their working environment. Society's interest in promoting workplace safety and productivity by means of conscientiously enforced drug-testing programs plainly outweighs the plaintiff's claimed contractual interest in gaining advance notice of drug testing so he could pass the test and keep his job.
For all of the foregoing reasons, the defendant's alleged conduct, however motivated, cannot reasonably be found to have been so "improper" as to make it actionable as a tortious interference with employment.
 III.
The defendant also claims that the plaintiff's fifth count, even if sufficient to allege a tortious interference with his employment, is barred by the exclusivity provisions CT Page 9221 of the Connecticut Workers Compensation Act, General Statutes31-284(a). Under that provision, an employee cannot maintain a common-law tort action against a fellow employee based on conduct arising out of his employment unless the fellow employee is alleged to have acted willfully or maliciously, or his tortious conduct occurred as a result of his operation of a motor vehicle. Jett v. Dunlap, 179 Conn. 215, 219 (1979); Perille v. Raybestos-Europe, Inc., 196 Conn. 529, 532 (1985).
In the instant case, the plaintiff claims that the fifth count of his complaint alleges conduct that was willful or malicious, since it was engaged in "for personal gain" and as a result of the defendant's negative feelings towards the plaintiff. That alone, however, is insufficient to remove this cause of action from the exclusivity provisions of Section 31-284(a). Under the test announced in Mingachos v. CBS, Inc., 196 Conn. 91, 102 (1985):
 "`A willful and malicious injury is one inflicted intentionally without just cause or excuse. It does not necessarily involve the ill will or malevolence shown in express malice. Nor is it sufficient to constitute such an injury that the act resulting in the injury was intentional in the sense that it was the voluntary action of the person involved. Not only the action producing the injury but the resulting injury must be intentional; Rogers v. Doody, 119 Conn. 532, 534 . . . (1935). `A wilful or malicious injury is one caused by design. Wilfulness and malice alike impart intent. . . . [Its] characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances.' . . . ." Markey v. Santangelo, 195 Conn. 76, 77-78 . . . (1985).
The Court went on to note that while "the line between a highly foreseeable risk and an intentional tort often grows thin," Mingachos at 103, only the latter will suffice to prove a wilful or malicious act. "[T]he line has been drawn . . . at the point where the known danger ceases to be only a foreseeable risk which a reasonable man would avoid, and becomes a substantial certainty." Id. Quoting Keating v. Shell Chemical Co., [610 F.2d 328], 332 [(5th Cir. 1980)]. CT Page 9222
Under the test of Mingachos, the fifth count of the plaintiff's complaint fails to allege wilful or malicious conduct for two basic reasons. First, for the reasons set forth in Part II of this Memorandum of Decision, defendant Welton's alleged refusal to give plaintiff Barton advance notice of his impending drug test cannot reasonably be held to have been conduct for which there was no "just cause or excuse." Id. Such conduct was plainly justified as a legitimate effort to effectively implement his employer's drug-testing program, and thereby to make his employer's workplace a safer and more productive environment.
The second reason why the plaintiff's allegations are insufficient to allege what the Mingachos Court defined as wilful or malicious conduct is its failure to claim that Welton intended to have Barton fail the drug test and to suffer a demotion as a result of that failure. There was no allegation that the defendant induced the plaintiff to take drugs on the day he was tested or knew before the test that the plaintiff would fail it. Likewise, there is no allegation that Welton intended any particular consequence to flow from Barton's failure to pass the drug test, and thus no claim that Welton intended, by his conduct, to cause the injury to employment here complained of.
For all of the foregoing reasons, defendant Welton's motion to strike the fifth count of the plaintiff's complaint is hereby granted.