# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-02085-SCT

*NEIL R. HARRISON AND JULIA A. HARRISON*

*v.*

*CHANDLER-SAMPSON INSURANCE, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/29/2003 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN, III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JAMES W. NOBLES, JR. |
| | W. BRADY KELLEMS |
| ATTORNEYS FOR APPELLEE: | DOUGLAS DREW MALONE |
| | RICHARD M. EDMONSON |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 01/20/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., CARLSON AND RANDOLPH, JJ.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     Neil R. and Julia A. Harrison, husband and wife, appeal to this Court from the Madison County Circuit Court's entry of a final judgment of dismissal on res judicata grounds. Finding no reversible error, we affirm.

## FACTS AND PROCEEDINGS IN THE TRIAL COURTS

¶2.     The Harrisons (referred to individually as Neil and Julia, for the sake of clarity) owned and operated two separate, but interactive, businesses. Their flagship venture, incorporated under the name Service Air ("Service Air"), operated as a heating and air conditioning business

for which the Harrisons served concurrently as directors, officers and shareholders. In addition to her interest in Service Air, Julia worked in her own capacity as a homebuilder. This separate business venture was operated as a sole proprietorship under Julia's exclusive control.[1] In building her homes, Julia employed a homesteader strategy. Typically, the Harrisons moved into the residences which Julia built, and, after a period of time, they sold them in the real estate market. The Harrisons' cooperative plan allowed their two business ventures to work in concert with each other as Service Air provided the central air components to Julia's building projects. In relation to this contractual relationship, the Harrisons regularly procured commercial general liability ("CGL") insurance coverage for Service Air.

¶3. In 1992 the Harrisons again implemented their cooperative business plan and, pursuant to their efforts to build their newest project, obtained an insurance policy through Chandler-Sampson Insurance, Inc. (Chandler-Sampson).[2] The policy was issued by Ohio Casualty Insurance Company ("Ohio Casualty") to Service Air on June 30, 1994. After two and half years of residency in Julia's newest home, the Harrisons placed the residence on the market. In October of 1994, Dr. Fred L. McMillan bought the Harrisons' house and shortly thereafter, the home began to deteriorate as problems ranging from structural defects to foundational flaws surfaced. On February 12, 1997, Dr. McMillan sued the Harrisons in the Circuit Court of Madison County for breach of contract, breach of implied warranty, negligence and fraud.

---

[1]Julia Harrison testified that the construction business was part of Service Air's operations although the building permits, deeds, financing and banking records are all in her name, not Service Air's name.

[2]Chandler Sampson also procured the Harrisons' automobile and workers' compensation policies.

2

A jury trial resulted in a verdict in the amount of $290,066 in favor of Dr. McMillan and against the Harrisons, and on appeal this Court affirmed the circuit court judgment. ***Harrison v. McMillan***, 828 So.2d 756 (Miss. 2002).

¶4.     Following the McMillan judgment, the Harrisons filed two suits in the Madison County Circuit Court against their insurers.   In Cause No. CI-98-0074, Chandler-Sampson, Ohio Casualty, and Great American Insurance Company[3] were named as defendants and in Cause No. CI-98-0111, Chandler-Sampson, State Automobile Mutual Insurance Company, and State Auto Property and Casualty Insurance Company[4] were named as defendants.   In both complaints the Harrisons asserted similar legal theories and claimed that Chandler-Sampson was liable for the damages stemming from the McMillan judgment.   Specifically, the Harrisons alleged that Chandler-Sampson incurred liability when it refused to notify the liability insurance carriers of the Harrisons' potential lawsuit and for their subsequent refusal to defend the suit. Concerning the defendant insurance carriers, the issue was whether the Harrisons' breach of their contract with Dr. McMillan fell within any of the specific areas of coverage provided by each insurer.

¶5.     The insurance carriers removed both cases to the United States District Court for the Southern District of Mississippi on a theory of fraudulent joinder.   The insurance carriers argued that the Harrisons did not have a cognizable claim against Chandler-Sampson and that

---

[3]Great American provided automobile insurance, general and commercial liability, and umbrella coverage through American National for the Harrisons in the operation of Service Air.

[4]State Auto Insurance Company provided the Harrisons' homeowners coverage.

3

Chandler-Sampson had been joined in the suit strictly for the purpose of destroying the federal court's diversity jurisdiction.

¶6. In both cases, the Harrisons filed a motion to remand to state court. The Harrisons asserted that Chandler-Sampson was liable under Mississippi law and, as the procurer of the policies in question, Chandler-Sampson incurred individual liability when it disclaimed its liability under all insurance policies and refused to undertake the defense of the McMillan suit. Additionally, and for the first time, the Harrisons asserted that Chandler-Sampson was jointly liable with the several insurance carriers for negligence.[5]

¶7. In considering the motions, the federal district court pierced the pleadings and employed a summary-judgment-like procedure in order to determine whether the Harrisons had any possibility of recovering against the non-diverse party, Chandler-Sampson. The federal district court acknowledged Chandler-Sampson's status as that of an agent for a disclosed principal and reasoned that, in order to incur independent liability, an agent must act with gross negligence, malice or recklessness. The federal district court applied this standard and determined that the Harrisons asserted no cognizable claim, and that they were thus precluded from recovering against Chandler-Sampson. Based on these findings, the federal district court dismissed Chandler-Sampson from the suit as an improper party, retained jurisdiction, and ultimately consolidated the two claims against the remaining insurance carriers. Several

---

[5]The Harrisons alleged a negligence theory for the first time in their motion to remand. In his opinion, the federal district court judge refused to consider negligence since it was not pled in the complaint as of the date the motion for removal was filed. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995), citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537, 59 S. Ct. 347, 83 L. Ed. 334 (1939).

4

months later, after determining that the Harrisons' judgment debt was not covered by the companies' insurance contracts, the federal district court granted summary judgment in favor of the insurance carriers. *Harrison v. Ohio Cas. Ins. Co., Inc.*, 519 F. Supp. 2d 518 (S.D. Miss. 2000). In 2002, the Fifth Circuit affirmed both the federal district court's grant of Chandler-Sampson's motion to dismiss and its grant of the insurance carriers' motions for summary judgment. *Harrison v. Ohio Cas. Ins. Co.,* No. 01-60386 (5th Cir. Jan. 8, 2002) (per curiam) *available at* ftp://opinions.ca5.uscourts.

gov/unpub/01/01-60386.0.wpd.pdf.

¶8. On April 14, 1999, the Harrisons filed suit in the Madison County Circuit Court against Chandler-Sampson. It is this suit from which the instant appeal arises. Under the auspices of a new legal theory, the Harrisons claim that Chandler-Sampson, as their insurance agent, was negligent in the writing of their insurance coverage due to Chandler-Sampson's failure to assure that the relevant policies covered the McMillan claims.

¶9. In response, Chandler-Sampson filed a motion for summary judgment asserting that it was previously joined as a party-defendant in two prior cases which were removed to the federal district court. Accordingly, in this motion, Chandler-Sampson raised the defense of res judicata and argued that the bar was appropriate since the Harrisons' current claim was fully adjudicated on the merits in the federal district court action.

¶10. The Madison County Circuit Court granted summary judgment in favor of Chandler-Sampson holding that the doctrine of res judicata barred all issues which were raised or could have been raised in the initial suit. It is from this final judgment that the Harrisons now appeal.

**DISCUSSION**

¶11.    We apply a de novo standard of review of a trial court's grant or denial of a motion for summary judgment. *Satchfield v. R.R. Morrison & Son, Inc.*, 872 So.2d 661,663 (Miss. 2004); *McMillan v. Rodriguez*, 823 So.2d 1173, 1176-77 (Miss. 2002); *Lewallen v. Slawson*, 822 So.2d 236, 237-38 (Miss. 2002); *Jenkins v. Ohio Cas. Ins. Co.*, 794 So.2d 228, 232 (Miss. 2001); *Aetna Cas, & Sur. Co. v. Berry*, 669 So.2d 56, 70 (Miss. 1996). Accordingly, just like the trial court, this Court looks at all evidentiary matters in the record, including admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. *Id.* at 70. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. *Id.* If, in this view, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. *Id.* When a motion for summary judgment is made and supported as provided in Miss. R. Civ. P. 56, an adverse party may not rest upon the mere allegations or denials of the pleadings, but instead the response must set forth specific facts showing that there is a genuine issue for trial. *Miller v. Meeks*, 762 So.2d 302, 304 (Miss. 2000). If any triable issues of fact exist, the  trial court's decision to grant summary judgment will be reversed. Otherwise, the decision is affirmed. *Id.* at 304.

I.    **WHETHER THE FEDERAL DISTRICT COURT'S REFUSAL TO REMAND AND SUBSEQUENT DISMISSAL OF CHANDLER-SAMPSON AS AN IMPROPERLY JOINED PARTY CONSTITUTED A FINAL ADJUDICATION ON THE MERITS?**

6

¶12.    The Harrisons' threshold argument is that the federal district court's denial of their motion to remand was not an adjudication on the merits.  They predicate this argument on their interpretation of Fed. R. Civ. P. 41(b).  The Harrisons assert that a Rule 41(b) involuntary dismissal is strictly reserved for a failure to prosecute, a failure to comply with the rules of civil procedure or a failure to comply with a court order.  In applying this interpretation to the federal district court's final order finding inter alia that Chandler-Sampson was an improperly joined party to the suit and that diversity of citizenship jurisdiction was preserved in accordance with 28 U.S.C. § 1332, the Harrisons argue that the federal district court dismissal was not one envisioned by Fed. R. Civ. P. 41(b) and thus was not an adjudication on the merits. The Harrisons assert that a §1332 diversity inquiry, for purposes of removal under 28 U.S.C. § 1441, requires only that the federal judge review the case in order to determine whether complete diversity exists.

¶13.    Conversely, Chandler-Sampson argues that the Harrisons' interpretation is contrary to the plain language of Rule 41(b).  It argues that a court need not specify a dismissal to be either with prejudice or without prejudice and to undergird this argument, Chandler-Sampson cites a case from the Fifth Circuit to assert that a failure to specify whether the dismissal is with prejudice or without prejudice should be interpreted as an adjudication on the merits.  *Nagle v. Lee*, 807 F.2d 435, 442 (5th Cir. 1987).

¶14.    Fed. R. Civ. P. 41(b) states:

> For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise

specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19 operates as an adjudication upon the merits.

¶15. Rule 41(b) distinguishes between claims which are adjudicated on their merits and claims that are disposed of due to the non-occurrence of a procedural technicality. While Rule 41(b) enumerates three specific instances where a case may be dismissed before reaching its substance, the rule contemplates more within its implicit exception. The United States Supreme Court has previously addressed Rule 41(b)'s exception:

> We regard the exception as encompassing those dismissals which are based on a plaintiff's failure to comply with a precondition requisite to the Court's going forward to determine the merits of his substantive claim...[T]here must have been a right adjudicated or released in the first suit to make it a bar, and this fact must appear affirmatively...[I]f the first suit was dismissed for defect of pleadings, or parties, or a misconception of the form of proceeding, or the want of jurisdiction, or was disposed of on any ground which did not go to the merits of the action, the judgment rendered will prove no bar to another suit.

*Costello v. United States*, 365 U.S. 265, 285, 81 S.Ct. 534, 544, 5 L.Ed.2d 551(1961). Recently, in *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 501-02, 121 S.Ct 1021, 1025, 149 L.Ed.2d 32 (2001), the United States Supreme Court stated: "[t]he original connotation of an 'on the merits' adjudication is one that actually 'pass[es] directly on the substance of a [particular] claim' before the court. That connotation remains common to every jurisdiction of which we are aware."[6] *Id.* at 501-02, 121 S.Ct at 1025.

---

[6]Quoting Restatement (Second) of Judgments § 19, Comment *a*, at 161 (1980).

8

¶16.   In *Hall v. Tower Land & Invest. Co.*, 512 F.2d 481 (5th Cir. 1975) the Fifth Circuit reasoned that a trial court's dismissal "under Fed.R.Civ.P. 12(b) falls directly under the wording of Rule 41(b), and cases have held that such decisions operate as adjudications on the merits." *Id.* at 483.   In its conclusion, the *Hall* Court stated "that granting defendant's motion to dismiss for plaintiff's failure to state a claim upon which relief can be granted operates as an adjudication on the merits..." *Id.*

¶17.   Fifth Circuit precedent regarding a district court's review of fraudulent joinder and removal-type proceedings is categorical.   Moreover, the burden of proving fraudulent joinder is a heavy one. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 259 (5th Cir. 1995).

> The removing party must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court, or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts.

*Id.*, 44 F.3d at 259 (citing *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir.1983)). A district court is mandated to employ a summary judgment-like procedure for disposing of these claims. *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990).   In *Carriere,* the Fifth Circuit explained:

> While we have frequently cautioned the district courts against [pre-trying] a case to determine removal jurisdiction, we have also endorsed a summary judgment-like procedure for disposing of fraudulent joinder claims. **In *B., Inc. v. Miller Brewing Co.*,** we carefully discussed the procedures for assessing fraudulent joinder claims and noted that "the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment...." 663 F.2d 545 (5th Cir. 1981)   The *B., Inc.* court expressly authorized consideration of evidence outside of the pleadings:   In support of their removal petition, the defendants may submit affidavits and deposition

transcripts; and in support of their motion for remand, the plaintiff may submit affidavits and deposition transcripts along with the factual allegations contained in the verified complaint...In short, the Fifth Circuit treats fraudulent joinder claims as capable of summary determination.

893 F.2d at 100. Furthermore, under Fifth Circuit precedent a district court must resolve all questions of fact and conclude all ambiguities in the controlling state law in favor of the non-removing parties. *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992). The Fifth Circuit's analysis ultimately requires the district court to "pierce the pleadings" and determine whether the non-removing party has any possible claim under applicable state law. *Carriere*, 893 F.2d at 100 (citing *Keating v. Shell Chem. Co.*, 610 F.2d 328, 331 (5th Cir. 1980)).

¶18. In today's case, the Honorable Henry T. Wingate, Chief Judge for the United States District Court for the Southern District of Mississippi, in a thorough opinion, reiterated Fifth Circuit analysis and determined that it was clear Chandler-Sampson, in its capacity as an agent, was not a party to the insurance contracts in question. Judge Wingate reasoned that the Harrisons failed to provide the court with any authority which substantiated the proposition that an insurance agent, who is not a party to the contract, owed a duty to defend under that contract. Judge Wingate further stated that he was not persuaded by the Harrisons' argument that Chandler-Sampson's decision to disclaim liability was made prior to any notice to the insurance carriers. Judge Wingate concluded:

> [T]he plaintiffs' [Harrisons'] conclusory allegations are simply not substantiated by any factual evidence...[i]t is clear that plaintiffs' [Harrisons'] complaint does

10

not state a cause of action against Chandler-Sampson for which Mississippi law can remedy.

Importantly, in rendering its decision, the federal district court took note of the Harrisons' failure to assert their negligence theory against Chandler-Sampson in their complaint as originally filed with the circuit court. In line with Fifth Circuit precedent, a district court is required to take the complaint as it existed at the time of the petition for removal. *Cavallini*, 44 F.3d at 265. The federal district court concluded that the Harrisons' legal theories could not succeed against Chandler-Sampson and it accordingly dismissed Chandler-Sampson from the suit. This interlocutory determination became final when it subsequently merged into the final judgment dismissing the remaining case against the insurance carriers.

¶19. The requisite criteria for a judgment to be given effect as an adjudication on the merits has been previously addressed by the United States Supreme Court and the Fifth Circuit. The Supreme Court has drawn a line of demarcation in regards to Rule 41(b) and distinguishes between cases that are decided on their merits and those which fail due to the existence of a procedural defect. In *Costello,* the United States Supreme Court clearly reasoned that the exception contained within Rule 41(b) encompasses dismissals which are based on a failure to comply with a "precondition requisite" to a court's deciding the case on its merits. 365 U.S. at 285, 81 S.Ct. at 544.

¶20. In ruling on the motion to remand, the federal district court was mandated by precedent to employ a summary judgment-like procedure in order to assess the viability and substance of the Harrisons' claims. It determined that the Harrisons' complaint did not state a cause of

11

action against Chandler-Sampson for which Mississippi law could provide a remedy. The federal district court's final analysis recognized that the Harrisons were procedurally barred from raising their only cognizable claim, that being one for negligence. It is clear that the federal district court applied the proper legal standard, gleaned the record for any possibility of recovery, and ultimately determined that the Harrisons had failed to state a claim against Chandler-Sampson upon which relief could be granted. Accordingly, the federal district court judge issued a final adjudication on the merits.

## II. WHETHER THE CIRCUIT COURT'S GRANT OF CHANDLER-SAMPSON'S MOTION FOR SUMMARY JUDGMENT BASED ON RES JUDICATA GROUNDS WAS PROPER?

¶21. The Harrisons argue that the Circuit Court of Madison County erred in holding that their present action was barred by res judicata. They urge that the circuit court misapprehended the distinction between insurance coverage vel non, and the agent's duty to procure proper insurance coverage. The Harrisons seek to differentiate between the federal district court's dismissal, which included only those claims arising out of the insurers' alleged breach of contract, and the claims which they now assert in state court regarding their agent's negligence. They further argue that the action did not accrue until after the federal district court determined that there was no coverage by the Ohio Casualty and Great American policies for indemnity or defense.

¶22. Res judicata, as a doctrine of claim preclusion, has two functions. Under the principle known as "bar,"res judicata precludes claims which were actually litigated in a previous action.

12

Under the principle known as "merger," res judicata prevents subsequent litigation of any claim that should have been litigated in a previous action.[7]  The United States Supreme Court has succinctly held, "[r]es judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979).  Likewise, this Court has been clear in regards to our application of the doctrine of res judicata, and we have held "'that when a court of competent jurisdiction enters a final judgment on the merits of an action, the parties or their privies are precluded from re-litigating claims that were decided or could have been raised in that action.'" *Miss. Dep't of Human Services v. Shelby*, 802 So.2d 89, 95 (Miss. 2001) (citing *Aetna Cas. & Ins. Co. v. Berry*, 669 So.2d at 66).

¶23.    Res judicata is fundamental to the equitable and efficient operation of the judiciary and "reflects the refusal of the law to tolerate a multiplicity of litigation." *Little v. V & G Welding Supply, Inc.*, 704 So.2d 1336, 1337 (Miss. 1997).

> It is a doctrine of public policy "designed to avoid the `expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibilities of inconsistent decisions.'" *Montana v. United States*, 440 U.S. 147, 153-54, 99 S.Ct. 970, 973-74, 59 L.Ed.2d 210 (1979).

The courts can not revisit adjudicated claims and "all grounds for, or defenses to recovery that were available to the parties in the first action, regardless of whether they were asserted or

---

[7]2 Jeffrey Jackson & Mary Miller, Encyclopedia of Mississippi Law §14:6, p. 350 (2001)

determined in the prior proceeding, are barred from re-litigation in a subsequent suit under the doctrine of res judicata." *Alexander v. Elzie*, 621 So. 2d 909, 910 (Miss. 1992).

¶24.    For the bar of res judicata to apply in Mississippi there are four identities which must be present: (1) identity of the subject matter of the action; (2) identity of the cause of action; (3) identity of the parties to the cause of action; and (4) identity of the quality or character of a person against whom the claim is made. *Quinn v. Estate of Jones*, 818 So.2d 1148, 1151 (Miss. 2002); *Dunaway v. W.H. Hopper & Assocs., Inc.*, 422 So.2d 749,751 (Miss. 1982). We have held that the absence of any one of the elements is fatal to the defense of res judicata. *Estate of Anderson v. Deposit Guar. Nat'l Bank*, 674 So.2d 1254, 1256 (Miss. 1996).

¶25.    The four requisite identities of claim preclusion are well-grounded in Mississippi jurisprudence and are dispositive in the instant appeal.  Here, all four identities are present and require that res judicata bar the Harrisons' current claim.

### (1)    *Identity of the subject matter of the action.*

¶26.    The doctrine of res judicata bars a second action between the same parties on the same subject matter directly involved in the prior action.  In the instant appeal, the subject matter of the federal suit and the subject matter of the present state civil action are the same.  The subject matter in each case directly involves the written instruments that constitute the Harrisons' insurance policies.  Specifically, the substance of the both lawsuits is founded on Chandler-Sampson's relationship to this policy.

### (2)    *Identity of the cause of action.*

14

¶27. This identity, which has proven to be difficult to apply, requires that the "cause of action" be the same. As an initial note, Miss. R. Civ. P. 2 was specifically promulgated to relieve confusion as to the term "cause of action." The purpose of the rule was to replace "cause of action" with "claim" or "claim for relief", and therefore provide our courts with "the freedom and authority to deal pragmatically with any aggregate of operative fact which gave rise to a right enforceable in the courts, consistent with the jurisdiction of the courts."[8] In cases involving claim preclusion, this distinction is indeed very important and requires that the parties, as well as the courts, distinguish between what body of fact constitutes a claim and what legal theories attach to that body of fact.

¶28. The rules of civil procedure, both Mississippi and federal, alleviate any penalty by allowing for both liberal joinder of "claims" and attachment of theories in support of claims. In interpreting Rule 18(a) and Rule 8(e)(2), Professors Wright, Miller and Kane acknowledge that the concept of a claim is "an inherently amorphous one" and prescribe that:

> Because of the uncertainty as to precisely what the term 'claim' means as used in Rule 18(a), a pleader generally will not be penalized if the court determines that the allegations in the complaint are misdesignated as multiple theories in support of a single claim rather than as independent claims or if the pleader made precisely the opposite mistake. Furthermore once the court concludes that Rule 18(a) does not apply because only a single claim has been pleaded, Rule 8(e)(2), which makes it clear that pleading different theories is permissible, may be invoked to uphold the pleader's method of presentation...In short the two rules are so comprehensive in their coverage that it is impossible to conceive of a joinder claim or theory situation that would not fall within the protection of one of them.

---

[8]*See* Miss. R. Civ. P. 2 cmt.

15

6A Wright, Miller,& Kane, Federal Practice and Procedure: Civil 2d § 1584 (1990) (cited in Miss. R. Civ. P. 18 cmt.).

¶29.    The procedural impetus created by allowing parties to assert all possibilities for recovery and, in essence, blueprint their suit with numerous claims and legal theories, is buttressed by the specter of claim preclusion.    Res judicata serves as a mandatory device for claim joinder by restricting the claims which a party may refrain from asserting against the opposing party.[9]    According to Professors Wright, Miller and Kane, "[t]he possibility of being barred from asserting a particular claim in a second suit undoubtedly has an *in terrorem* effect and encourages cautious attorneys to join claims..." 6A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1582 (1990).    The ramifications of splitting a claim among two or more suits were outlined by this Court in ***Alexander*** when we stated that "[r]es judicata and the issue of splitting a cause of action are closely related." ***Id.*** at 910.    Citing language from Restatement (First) of Judgments §62 (1942), we further stated in ***Alexander***:

> Where a judgment is rendered, whether in favor of the plaintiff or the defendant, which precludes the plaintiff from thereafter maintaining an action upon the original cause of action, he cannot maintain an action upon any part of the original cause of action, although that part of the cause of action was not litigated in the original action, except * * *" (c) where the defendant consented to the splitting of the plaintiff's cause of action.

***Id.*** at 910.

---

[9] 1 Jeffrey Jackson, Mississippi Civil Procedure §16:11 (2004)

16

¶30.    In ***Hayes v. Solomon***, 597 F.2d 958, 982 (5th Cir. 1979), the Fifth Circuit also addressed the practice of claim-splitting and stated, "this principle prohibiting [re-litigation] requires that a plaintiff bring in the first forum every point which properly belongs to the subject of litigation, and which the parties, by exercising reasonable diligence, might have brought forward at the time." ***Id.*** at 982.    The Fifth Circuit, referencing Professor Moore's treatise on civil procedure, likewise stated "[i]n accordance with public policy, partially to conserve the courts' time but probably in the main to prevent the hardship upon [a] defendant of unnecessary piecemeal litigation, a single cause of action cannot be split so as to be properly made the subject of different actions..."[10] ***Id.*** at 982.    A party is encouraged to plead all claims on the front end so as not to be precluded from so pleading on the back end, as expressed in the first sentence of the Comment to Miss. R. Civ. P. 18, which states: "The purpose of Rule 18 is to eliminate piecemeal litigation by permitting liberal joinder of claims."

¶31.    In order for res judicata and the ban on claim-splitting to take effect, the litigation must involve the same claim premised upon the same body of operative fact as was previously adjudicated.    As stated earlier, this distinction can be difficult to make, especially, when a case involves several different legal theories which apply to one claim.    When faced with this enigma, this Court has looked past the legal bases asserted and relied more on the factual and transactional relationship between the original action and the subsequent action.    The

---

[10] *See* 18 Moore's Federal Practice 3d § 131.12 (2004).

transactional approach, which is specified in the Restatement (Second) of Judgments (1982) and has been referenced by the United States Supreme Court in *Nevada v. United States*, 463 U.S. 110, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983), states that:

> causes of actions are the same if they arise from the same "transaction"; whether they are products of the same "transaction" is to be determined by "giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."

*Id.* at 131 (citing Restatement (Second) of Judgments § 24 (1982)). In *Walton v. Bourgeois*, 512 So. 2d 698, 702 (Miss. 1987), this Court barred an unsuccessful tort plaintiff in a medical malpractice suit from re-litigating her claim under a new legal theory of breach of contract. *Id.* at 702. In determining that the claims were indeed the same, this Court explained that identity between claims exists "when the underlying facts and circumstances are the same [in the second suit] as those involved in the first suit." *Id.* at 701. We reasoned that "[t]he primary right and duty asserted and the primary wrong complained of were the same in each action" and found that "[o]nly the legal bases advanced for relief were arguably different." *Id.* at 702. In *Walton*, this Court ultimately found that breach of contract was a ground which should have been asserted in the parties' first suit inasmuch as "[i]t was a claim that might have been litigated in the previous lawsuit and, indeed, it should have been." *Id.*

¶32. In *Aetna Cas. & Sur. Co. v. Berry*, another case evidencing this Court's same claim requirement, Ms. Berry brought three concurrent actions in federal court against her husband's

18

insurance carriers demanding coverage under her husband's uninsured motorist policies. 669 So.2d at 66. After the three cases were consolidated, Ms. Berry requested the trial court to allow her to amend her federal court complaint and include an additional allegation premised on the intentional tort of "bad faith" because two of the insurers wrongfully denied coverage. The federal court case resulted in a judgment of $30,000 and a determination that Mr. Berry was only covered at the statutory minimum in regards to her husband's uninsured motorist policy with Aetna. Two years after the conclusion of her first case, Ms. Berry filed a second action in state court where she sought to establish the tort liability of the uninsured motorist. Additionally, Ms. Berry renewed her bad faith claim against Aetna, this time including allegations that she had been injured financially by Aetna through its agent's negligence and its own fraud. The state court case ultimately resulted in a large monetary judgment against Aetna, which Aetna appealed to this Court on res judicata grounds. On appeal, Ms. Berry argued that since her bad faith allegation was never ruled on by the federal court res judicata could not apply. In finding that res judicata precluded Ms. Berry's bad faith claim, we reasoned that the "two claims stem from a common nucleus of operative fact and even assuming arguendo that she did not raise bad faith and medical damages claims in the district court case, it is clear that she could have." 669 So.2d at 69. Additionally, this Court concluded that Ms. Berry's claims against Aetna's agent were barred as well: "The facts surrounding the issuance of the policy were litigated in the district court suit against Aetna. That was the forum in which Ms. Berry should have asserted that Aetna was liable for Young's [agent's] negligent failure to inform Mr. Berry about UM coverage." *Id.* at 69-70.

19

¶33. The Fifth Circuit applies a similar analysis when determining whether a claim should have been included in prior litigation. In *Smith v. Safeco Ins. Co.*, 863 F.2d 403 (5th Cir.1989), the plaintiff first brought suit in federal district court for punitive damages under an insurance contract for the insurer's refusal to pay a claim under the policy for medical expenses. On appeal, the Fifth Circuit held that res judicata barred the second suit in which the plaintiff sought to collect under-insured motorist benefits under the same insurance policy. The Fifth Circuit applied the Restatement on Judgment's transaction test and stated:

> Applying this rule, [plaintiff's] first action extinguished all of [plaintiff's] claims against Safeco "with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement (Second) of Judgments §24 (1982). All of Smith's claims against Safeco sought coverage under a single insurance policy for injuries resulting from one accident. These claims arose out of a common nucleus of operative fact, and comprised one transaction. Smith was required to bring all of his claims or causes of action against Safeco that arose out of the crash. His second action against Safeco is precluded.

*Smith*, 863 F.2d at 404.

¶34. In this appeal, the Harrisons have renewed their claim for relief based on a theory of negligence. The Harrisons' present claim involves the same body of evidence that gave rise to their initial suit. There was but one transaction and likewise one injury in this case. The Harrisons' initial suits involving their local agent, Chandler-Sampson, was made up of two concurrent actions. Both claims were derived from the written instruments that represented the Harrisons' insurance coverages and both claims sought recovery by way of indemnification in order to satisfy the debt incurred as a result of the McMillan judgment. The federal district court fully evaluated the Harrisons' two claims and determined that the Harrisons had failed

to plead a single viable theory of recovery against Chandler-Sampson. The federal district court appropriately dismissed their claims and consolidated the actions.

¶35. Now, in this successive suit, the Harrisons seek recovery by way of the same written instrument involved in the earlier suit against the same defendant, seeking the same relief for the same injuries in the same court, based on the same transaction. The only difference between the current and prior suits is the legal bases on which they are grounded. Accordingly, the Harrisons seek to proceed under a theory of negligence and shoot the arrow that was left in their quiver following the dismissal of their first suit against Chandler-Sampson. The law is well settled that "where one has a choice of recovery for a given wrong, they may not assert them serially in successive actions but must advance all at once on pain of the bar of res judicata." *Walton*, 512 So. 2d at 702. The rule stated by the American Law Institute is that res judicata, as a doctrine of claim preclusion, serves "to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action (1) To present evidence or grounds or theories of the case not presented in the first action, or (2) To seek remedies or forms of relief not demanded in the first action." Restatement (Second) of Judgments §25 (1982).

¶36. The plaintiff is provided with the benefit of the procedural mechanism at the outset of suit. Moreover, the plaintiff is afforded the option of attaching multiple legal theories to an individual claim, of attaching multiple claims to an individual suit and, ultimately, of attaching the suit to several defendants. It follows that the very doors to the courthouse that are so wide-open at the beginning of suit must be closed tightly upon final adjudication. Accordingly,

21

plaintiffs must proceed with a watchful eye on claim preclusion and claim splitting, and consider the full gamut of their claim , in regards to the body of operative fact to which it attaches, and, additionally, determine the legal theories that will best support this claim. Plaintiffs must proceed with "reasonable diligence." *Hayes*, 597 F.2d at 982. To allow a plaintiff to breathe life into a claim by way of a new theory for recovery, and resuscitate that which had previously been fully adjudicated, would run contrary to the maintenance of an effective judicial system. While the result is harsh, allowing the Harrisons to re-visit the same transaction and assert negligence in a second successive action would be to endorse garden-variety claim-splitting.

### 3. *Identity of the parties to the cause of action.*

¶37. "To satisfy the identity [of parties] element, strict identity of the parties is not necessary. A non-party defendant can assert res judicata so long as it is in "privity" with a named defendant." *Russell v. SunAmerica Secs., Inc.*, 962 F.2d 1169, 1173 (5ᵗʰ Cir. 1992) (citing *Nevada v. United States*, 463 U.S. 110, 129, 103 S. Ct. 205, 77 L.Ed. 2d 509 (1983)). In the present case the identical parties are involved. In both suits the Harrisons named Chandler-Sampson in its capacity as the insurance agent who wrote the Harrisons' policy.

### 4. *Identity of the quality or character of a person against whom the claim is made.*

¶38. In today's case, the character and status of Chandler-Sampson has remained intact. It is the same company which was named in the two prior lawsuits filed by the Harrisons in the Circuit Court of Madison County and, subsequently removed to federal district court.

22

Chandler-Sampson remains a separate corporation doing business in the state of Mississippi, and William S. Sampson remains its agent for service of process.

## CONCLUSION

¶39. The Circuit Court of Madison County properly granted summary judgment in favor of Chandler-Sampson and against Neil and Julia Harrison based on a finding of res judicata. In the Harrisons' first action against Chandler-Sampson, the federal district court applied a thorough summary judgment-like procedure, gleaned the record and concluded that the Harrisons failed to assert a cause of action against Chandler-Sampson for which Mississippi law could provide a remedy. We find that this ruling was a final adjudication on the merits. Furthermore, we find that the four identities which are prerequisite to the preclusion of a claim on res judicata grounds are present, and that the Harrisons' current action is barred. We thus affirm the final judgment of the Circuit Court of Madison County.

¶40. **AFFIRMED.**

**SMITH, C.J., COBB, P.J., EASLEY, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. WALLER, P.J., AND DIAZ, J., NOT PARTICIPATING.**